# THE SPRINGFIELD ENGINE AND THRESHING COMPANY
## v.
## EDWARD W. GREEN.

*Malicious Prosecution—Action against Corporation and its Agent—Agency—Express and Implied Authority—Evidence—Instructions—Probable Cause.*

1. Although a corporation can act only through its agents, it may be liable for a malicious prosecution.

2. The scope of an agent's authority may be shown by circumstances as well as by proof of express authority. It includes whatever is fairly implied by the authority expressly given.

3. To be implied, as within the scope of the authority expressly given, the act or proceeding must be of itself necessary, usual or appropriate to the end expressly contemplated by the contract of agency, or to meet an exigency naturally arising in the ordinary course of the business intrusted to the agent.

4. In an action on the case for malicious prosecution against a corporation and one of its agents, brought by a debtor of the former who had been charged with forgery by the latter, the charge being dismissed upon the preliminary examination, it is *held:* That the agents of the defendant corporation do not appear to have had authority, express or implied, to institute the prosecution in question ; that the authority of its agents was not extended by what they said or did, separately or together, apart from the company; that the corporation had no pecuniary or other special interest in the prosecution complained of; that there was probable cause at least as to one of the agents of the corporation; and that there was error in the instructions and in the admission of evidence.

[Opinion filed May 24, 1887.]

APPEAL from the Circuit Court of Macon County; the Hon. J. F. HUGHES, Judge, presiding.

Messrs. PALMER, ROBINSON & SHUTT, for appellant.

Messrs. ELDRIDGE & HOSTETLER and I. A. BUCKINGHAM, for appellee.

PLEASANTS, P. J.  In an action on the case for malicious

prosecution appellee recovered against appellant and one Albert Manacke a verdict for $5,000 which the court refused to set aside, and judgment having been entered thereon the company took this appeal.

It made threshing machines at Springfield, Ohio, and Manacke sold agricultural implements at Cerro Gordo, Illinois. In January, 1884, he engaged to sell its manufactures within a certain district in this State, for the season ending October 1st, on terms set forth in their written agreement, of which we need to state no more than that he was to "guarantee all notes good when taken by him and attend to the collection, when necessary, or obtain further security on or the renewal of such as should not be paid promptly at maturity;" to sell at the retail price in Springfield, adding freight and charges, and see that every machine sold by him was properly set up and started to work; and was to receive a commission of twenty per cent. in full for all his labor and expenses in connection therewith. It also declared that said instrument "in printing and writing contained the entire agreement between the parties and that no outside verbal understanding should be of any force or effect whatever."

Late in June he sold one of its threshers to appellee for $550, and delivered it early in July without receiving any money, note or other thing in payment. About the 13th of October, Van H. Cartmell, a director of the company, then traveling for it to "make sales and to settle accounts with agents," in company with him, called on appellee for a settlement, which he then effected by taking two notes of appellee and his brother, one for $332.72 and the other for $221.58, payable respectively on the first of January and October, 1885. Nothing was then said about the rebate order hereinafter mentioned.

The first of the notes was presented by a bank cashier from Springfield for payment shortly after it matured, but was not paid. It was afterward sent by the company to Manacke for collection. He delivered it for that purpose to E. S. Mc-Donald, an attorney at law, of Decatur. From his possession it disappeared under circumstances which excited his suspicion

of appellee, to whom he had shown it in his office, and who thereafter assigned its non-production as the reason for refusing to pay it.

About the middle of June, 1885, Frank G. Thomson, appellant's "traveling collector of past due paper for the west and northwest," with Manacke and McDonald, called on him and endeavored to effect an arrangement of the claim. Appellee still required that the note be produced or a bond of indemnity given. He says Thomson claimed he was a lawyer and that they could sue on the lost note without giving a bond, threatening also that unless it was settled "they would make it warm for us." Nothing was then said about the rebate nor any definite conclusion reached, but appellee proposed to meet them again that day at Decatur. Thompson and McDonald did meet him there at the office of Eldridge & Hostetler, his attorneys, where, after some further talk, he expressed his readiness to pay both the notes provided the rebate was allowed; and thereupon Mr. Hostetler produced a paper of which the following is a copy: "Cerro Gordo, Illinois, July 2, 1884. I hereby agree to make E. W. Green a discount of ($166.60) on a Springfield, Ohio, vibrating separator, rebate to be made at time of settlement. A. Manacke." This being the first information they had of the existence of such a paper, they declined to allow the discount mentioned, and the negotiation was broken off. McDonald immediately reported the matter to Manacke by letter inclosing a copy, to which he promptly replied that the figure "1" had been put in since the paper was delivered, and without his knowledge or consent. Soon afterward he came to Decatur, went with Thomson and McDonald to see it, and upon inspection repeated the statement. McDonald testified that on leaving the office he asked "what shall we do now," and that Thomson answered "we will arrest him," but Thomson contradicted him. However, they called on the State's Attorney, to whom McDonald and Manacke respectively stated what they claimed to be the facts in relation to the loss of the note and the making of the rebate paper, and after some discussion he prepared a complaint against appellee for forgery, which was sworn to by Manacke

Springfield Engine & Threshing Co. v. Green.

before a Justice of the Peace, and a warrant issued thereon was delivered to McDonald, who delivered it to a Constable to execute. Thomson also was present and requested the officer to get a settlement of the company's claim, if he could, by cash or security, promising him $10 in case he succeeded, though it was understood that he was to make the arrest in any event. The effort made by him to effect a settlement failed and appellee was brought in under arrest. On his application the examination was postponed for thirty days, McDonald making some suggestion in relation to bail, the amount of which was fixed at $800, and given at once. On the same day a suit was brought upon the note by McDonald as attorney for the company. Thomson made affidavit of the debt and all three signed the bond—Thomson for the company, which afterward ratified his act.

The examination on the criminal complaint occupied portions of two days. McDonald and Thomson were present and the State's Attorney, from time to time, conferred with them. Cartmell also attended, having been sent by the secretary of the company as a witness upon request of Manacke. He also talked with them and the State's Attorney, but was not called to testify. On his direct examination Manacke reiterated his statement as to the alteration of the paper, but on cross-examination became uncertain, for reasons partially stated, and finally, in effect, withdrew the charge, whereupon the State's Attorney formally dismissed the complaint and appellee was discharged. On the same day, after some negotiation, the civil suit was settled and dismissed, the rebate claim being allowed and the balance ($410) paid to Cartmell, for the company, in a check of appellee's father, which he indorsed and collected. Afterward, and before this suit was brought, the grand jury was in regular session and did not find an indictment against appellee.

Such, in substance, is the case before us, and we are of opinion thereon that, as to appellant, the verdict was against the law and the evidence.

That a corporation can act only through natural persons or its agents; that it may be liable for a malicious prosecution;

that it must answer, like natural persons, for whatever is done by its agent, *bona fide*, for it in the line of his duty and within the scope of his employment, even though it be wilful and malicious on his part and against its particular order; that the scope of his employment may be shown by circumstances as well as by proof of express authority; that it includes whatever is fairly implied by that which is expressly given; that malice in a prosecution may be inferred, if the jury think the inference warranted from a want of probable cause; and that one may become liable for the wrongful act of another without his antecedent authority, express or implied, by its ratification, as where he adopts and continues it, or in some cases where he accepts the benefit of it or fails to disavow it when he has notice that it was done in his name or interest or under color of his authority, are propositions conceded by counsel and recognized by the court. But in all their light we are unable to discover from this record any cause of action whatever against this company.

If liable at all it must be because the prosecution complained of was instituted or carried on by its agents—persons having its authority, express or implied, so to do—or was ratified by it.

The supposed agents were Manacke, McDonald, Thomson and Cartmell. All the express authority they had, respectively, is fully set forth in the foregoing statement. That of Manacke was "to attend to the collection" of the note sent him; of McDonald, that of an attorney at law to make such collection; of Thomson, to collect a class of notes that included the one in question; and of Cartmell, to settle with Manacke as one of the company's agents. What they said or did, separately or together, apart from the company, could not extend it; yet much evidence of this sort was admitted over objection. Each of them was asked if he had ever received from the company or either of its officers, any and what authority, direction, advice or suggestion in reference to this or any other criminal prosecution, but on appellee's objection was refused permission to answer. That the authority so given to either expressly included that of prosecuting anybody for a criminal offense in any case, of course, is not claimed.

Springfield Engine & Threshing Co. v. Green.

And as to what is implied, no question can be made upon the case of McDonald. His retainer to a particular note certainly did not imply authority to prosecute the maker for the forgery of another paper. The court below properly so instructed the jury; and since there is no proof that he had any otherwise, what he did about it is immaterial as respects the company.

That of Cartmell may be omitted also, for the reason that he is not shown to have taken any part in it, except to attend as a witness on the examination, and that not of his own motion. He so swears and nobody contradicts him. Manacke had sold a machine for which he had made no return of money or note, and the term of his agency to sell and settle had expired. Cartmell then came, strictly in the line of his duty, to settle the company's account with him. His taking the notes was a settlement of that account with Manacke, and also with appellee. Having accomplished it, he left before he had heard of any rebate or there was any thought or pretense of occasion for the prosecution that followed. But he had knowledge of a fact which, after the prosecution was begun, was thought by Manacke or his counsel to be important; namely, that appellee had then settled · with the company without mention of his claim for a rebate of thirty per cent., which, according to the paper as it now appears, was to be "made at time of settlement."

Doubtless it was to prove this fact that his attendance was desired. True, the secretary sent him, but not on his own motion nor that of the company. Its sending him, and his going, upon request of the prosecutor, were duties on their respective parts, the performance of which signified nothing as to the voluntary relation of either to the prosecution. When he came he talked with Manacke, McDonald and Thomson, and also with the State's Attorney, before and during the examination. It would have been very strange if he had not, even though he had been opposed to the proceeding. What he said does not appear, but he swears he did not advise or encourage it, and the fact of his conversing with them under the circumstances is no evidence that he did. If he had done

so, however, we should hardly need to argue that authority for it from the company was not implied in the power given him to make sales and settle accounts with agents.

Thomson also denies, and it is by no means clear, that he took any part in it. His objects and efforts were to get the money or security on the past due note, which was his specific business. To that end he naturally and properly sought the co-operation of Manacke and McDonald, and offered to compensate the Constable who held the warrant for his aid, if successful; but with the prosecution for forgery he declares he had nothing to do. The evidence to the contrary consists of the conditional threat to " make it warm " for appellee and his brother, the suggestion of the arrest, as stated by Manacke, and his being in company with him and McDonald when several steps were taken by them in the course of that proceeding. That the threat had no reference to the prosecution for forgery is clear from the fact that he was not then aware of the existence of the rebate paper, and that it did refer to a civil suit on the note is manifest from its immediate connection with the opinion he had expressed that they could sue on the lost note without giving a bond of indemnity. Manacke thought it was Thomson who said " we will arrest him," but he may have been at fault in his recollection of the person who said it; McDonald would have been as apt to suggest it. Thomson positively denies that he did, and is corroborated by the State's Attorney, who was a witness called by appellee, and testified that in the interview of these three with him, almost immediately after that suggestion is claimed to have been made, Thomson said he was not prosecuting. His being with them on the occasions referred to was entirely natural, and as entirely insignificant in its bearing upon the question of his complicity.

But whatever may be the truth upon this point, the authority expressly given him was precisely the same in its application to this case as that of Manacke. It covered more cases than his, but was the same as to each and to both of them in this: it was to collect or to attend to the collection of the note of appellee and his brother then due to the company. Their

implied authority must, therefore, be the same also, and will be considered presently in connection with the conduct of Manacke.

There is one fact, however, in view of which the company could not be held liable for the prosecution here complained of, by reason of any action of Thomson in the premises, even though his authority to institute it had been express and clear, and that is, that as to him it was not without probable cause.

The positive statement of Manacke, who made the paper, that it had been altered without his knowledge or consent, strengthened by the fact that as presented by appellee, it imported a promise to allow him a rebate of $50 more than his own commission, was certainly probable cause. Angelo v. Faul, 85 Ill. 106; Harpham v. Whitney, 77 Ill. 32; Anderson v. Friend, 71 Ill. 480, 485. And if so for the agent then also for the principal. Cartmell would be protected by the same fact. So that the right to recover against the company as principal must rest upon the acts and authority of Manacke alone, if indeed, even as to him, it might not successfully interpose the same bar, since there is no reason to believe that his accusation of appellee was wilfully false or absolutely without ground for suspicion at the time. See Harpham v. Whitney, 77 Ill. 32, 39, and cases there cited. Perhaps his explanation, if he had been allowed to make it fully, would have satisfied the jury that he was not actuated by malice.

Manacke, however, did institute and carry on the prosecution. He had no express authority from the company so to do. The full extent of that was to attend to the collection of its note against appellee and his brother. Unless it implied or embraced within its scope authority to prosecute appellee for forging the rebate promise, or the company ratified his proceeding, it is not liable in this action.

It may help us to clearer views of both these questions—implied authority and ratification—to consider for a moment what occasion it had or could have had to authorize or ratify it.

Counsel assume and repeatedly assert without attempting to show, that it alone was interested to suppress the rebate paper.

But the proof is it was Manacke's individual promise that was alleged to have been forged. It did not purport to bind anybody else. The company sent its machines to him, on his own order, at the retail price in Springfield, and held him to account and settle for them at that price in cash or notes guaranteed by him, less only his commission of twenty per cent. He had no authority to promise purchasers, on its account, any rebate or discount on that price, nor did he assume to exercise any such. He made the promise that was made in his own name, on his own individual responsibility, and not as agent. He alone was liable upon it. And appellee so understood the matter. He agreed with Manacke to keep the knowledge of it from the company. Three months after it was received he settled with the company, through another agent, in presence of Manacke, at the full retail price, and gave his negotiable notes for it. Thus these papers were not parts of the same transaction nor between the same parties. How then can it be pretended that the rebate promise could be set off against the notes, even in the hands of the company, or that it had or could have any interest whatever to defeat or reduce his claim upon that promise? It is said that the company allowed him the full amount of it on settlement, immediately after the criminal complaint was dismissed, and so recognized its interest in and liability for it. The inference to be drawn from all the facts attending that settlement is directly the contrary. One of the notes was not then due, and the other was lost. Yet appellee, his brother and his father proposed to pay both if the rebate was allowed. Cartmell, representing the company, did not undertake for it to make the allowance, but referred that question to Manacke and his counsel in the matter of the criminal prosecution, McDonald, thereby showing that he did not recognize the promise as that of the company. McDonald at first thought the allowance should not be made, evidently believing, notwithstanding the outcome of the charge of forgery, that his client never intended to give appellee all his commission and $50 in addition, as an inducement to purchase, but on further conference with him they consented, and therefore it was done. By a variety

of proper questions it was sought to learn from Cartmell whether Manacke did not pay or secure to the company the amount so allowed over and above his commission, but counsel for appellee succeeded, by objection persistently made, in excluding the evidence so offered. It is with ill grace, therefore, that they now urge this allowance as evidence that the company or Cartmell recognized its liability on the promise of Manacke. Our conclusion on this point, then, is that it neither had in fact, nor supposed it had, any pecuniary or other special interest in the criminal prosecution.

From this it might be expected to appear, as it did, that neither of the persons supposed to have been personally engaged in it pretended to be acting therein in its name, or interest, or under color of its authority. Manacke well understood that his individual interest alone was affected by the supposed forgery. He made the complaint on his own responsibility and in his own name, and procured counsel for himself. McDonald swears he appeared not for appellant but for Manacke alone. If Thomson had anything to do with it, it was as a friend of Manacke and in the interest of public justice. Nor was anything to the contrary reported to the company. Thomson says he reported all that occurred as he understood it. From which it is strangely claimed, as matter of fact, that he reported the pregnant suggestion "we will arrest him," as having been made by himself, although he further swears that he did not make it, and as matter of inference, that the company thereby understood its authority was being asked for the proceeding. There is no evidence to that effect.

If, then, the company had no reason to suppose it was commenced or carried on in its interest or under claim of its authority, its failure to repudiate it was no evidence of ratification. Any attempt on its part to repudiate it would have been sheer impertinence. Where one ought to have ratified the act of another, performed on his account, slight evidence may warrant a jury in finding that it was done. C. & St. L. R. R. Co. v. Mahoney, 82 Ill. 73; T., W. & W. R. R. Co. v. Prince, 50 Ill. 26. But here no obligation, moral or other,

rested upon the company to assume the responsibility for Manacke's acts, and no semblance of evidence that it did so is presented, except their failure to disavow them, together with the sending of Cartmell as a witness at his request and the allowance of the rebate claim, which have been already considered and, in our opinion, are of no weight whatever.

The view above taken of the relation, or rather of the want of relation, between the prosecution of appellee and the business of appellant intrusted to their agents, if sound, would seem to be conclusive upon the question of implied authority also.

We do not propose to notice particularly the many cases cited by counsel. In some, the act of the agent was clearly ratified, as in Fentor v. Wilson Machine Co., 9 Philada. 189; in others it was of the precise description expressly authorized to be performed in a proper case and manner, as in Pennsylvania Co. v. Weddell, 100 Ind. 138, and Chicago City Ry. Co. v. McMahon, 103 Ill. 485. But we find none maintaining the liability upon the clear ground of implied authority that may not be distinguished, on principle, from the one at bar. They show that to be implied, as within the scope of the authority expressly given, the act or proceeding must be of itself necessary, usual or appropriate to the performance of a duty or the accomplishment of an end of the kind expressly contemplated by the contract of agency, or usually performed or accomplished by agents of a like or corresponding character, or to meet some exigency naturally arising in the ordinary course of the business intrusted to him, for the protection, preservation or recovery of some property or right in his charge as agent.

Such an act will be wrongful only when misapplied or otherwise improperly performed, and when it is, whether through wilfulness or malice or only carelessness or unskilfulness of the agent, it is none the less within the scope of his authority, and the principal should answer for it.

The ground of his liability is that in contemplation of law the act is his, though performed by another. In the words of our Supreme Court, " he must be considered to be construct-

ively present and commanding the act." St. L., C. & A. R. R. Co. v. Dalby, 19 Ill. 352, 370. For a fuller statement of the principle, with the reason and authorities supporting it, see Arasmith v. Temple, 11 Ill. App. 39, 44. In regard to acts that would be authorized by implication only, because within the scope of the employment, the principal may control the agent as to the object, time, means and manner of performance, or forbid it altogether. He has this right because the act is done or proposed to be done in his business; and because the act, as performed, is in law his own. He ought so to use it, as he may, by selecting a proper agent, giving proper direction and exercising a proper control, that others be not injured, and failing, is justly liable for the consequences.

This principle of liability furnishes a test by which to determine whether a given wrongful act of the agent is or is not within the scope of his employment. It may often be difficult to decide correctly whether the employer had the legal right, simply by virtue of his relation as principal, to forbid its performance absolutely or in the particular case in question, or to require its performance in a different and proper manner; but if it be clear that he had, the act must have been within the scope of the employment, and if otherwise, it could not have been so.

We believe this test would fairly try every one of the cases cited, and see no reason why it should not be always reliable.

Now it is certain that if it had been actually present it would have had no power to avert the injury here complained of, no right, as principal or otherwise, to forbid the prosecution or any act done therein by Manacke, Thomson, or any other person named in this connection, nor to require of them or either of them the performance of any such act in any manner or in any case whatever. The plain reason is that they were employed by appellant only to attend to its business, and this was none of its business. Otherwise it would have had the right to forbid it or to direct and control the manner of its performance.

Counsel finally contend that even if the prosecution was of itself outside the scope of their employment, yet their inten-

tional use of it as only a means of collecting appellant's note
would make it liable therefor.    If their intention had been in
fact limited, as here assumed, the legal effect stated would not
have followed.    The law does not thus expose persons who
do business through agents.    In support of the  proposition
contended for, the  following  passage is cited from a  recent
Indiana case reported in 1 N. E. Rep. 849 :  "Where the serv-
ant is engaged  in accomplishing an end which  is within the
scope of his employment and while so engaged adopts means
reasonably intended and directed to the end, which result in
injury to another, the master is anwerable for the consequences,
regardless of the motives which induced the adoption of  the
means, and this, too, even though the means employed were
outside of his authority and against the express order of the
master."    With great respect for the learned court, we appre-
hend that the words " outside of his authority " should  have
been omitted, or the word " express " inserted before "author-
ity."    In the case supposed the means employed would not
be "outside of his authority," though outside of that which
was expressed.    General authority to accomplish a given end
includes the use of all  means " reasonably  intended  and
directed to that end," and as to other parties affected thereby,
the principal can not limit them by  express orders to the
agent.    But the criminal prosecution of appellee for  forging
a promise by Manacke to him was not a reasonable means to
collect money due on a promise by him to appellant, and
therefore could not be "reasonably " so intended and directed.
As to such as are absolutely outside of the authority of the
servant, express or implied, there is no relation between them,
and the responsibility of a master can not attach.

The plaintiff having entirely failed to show that the wrong-
ful acts complained of, if they were wrongful, were commit-
ted under the authority of the thresher company, express or
implied, or ratified by it, the  motion to set aside the verdict
against it should have been sustained.

We think the court erred also in  admitting and excluding
evidence, as above incidentally stated, and in several instruc-
tions given for the plaintiff.    They tell the jury that from the

facts therein respectively stated, the law implies malice, or antecedent authority, or ratification, instead of informing some in terms and others in effect, as that the jury should so find them that they are proper to be considered by the jury in determining whether or not there was malice, etc. This fault vitiates the 2d, 3d, 4th, 5th, 6th, 10th and 12th. The 14th and 15th further include the hypothesis that a full report of the facts, as they really were, was made to the company, which we think was not warranted by the evidence. The 9th, as an abstract proposition, should have excluded the notion of public justice, and added the qualification, "without probable cause."

For these errors the judgment, as against both the defendants, will be reversed and the cause remanded.

*Reversed and remanded.*