# Croasdale *v.* Von Boyneburgk, Appellant.

*Equity—Account— Joint owners of tugboat—Managing owner—Salary as such.*

Where .one of the owners of a tugboat, the boat being held by all the owners as tenants in common, proceeds against one of the other owners for an accounting, the joint owner whose duty it is to account, cannot claim a salary as managing owner, where it appears that no salary was ever paid to the managing owner of the boat; that the accountant as managing owner employed agents of the tugboat, who performed the duties as such, and were compensated by commissions upon the gross sums they handled; that the business of the boat was carried on at the office of one of the agents, the managing owner having no office; that the agents kept the accounts of the boat's receipts and expenditures, paid the crew, and some of the bills, solicited and obtained business for the boat and had general charge of her; and where it further appears that it was the usual and customary arrangement in the business, that the managing owner should serve without charge, and the agent of the company be paid a percentage upon gross receipts.

*Joint owners of tugboat—Managing owner—Duty to commence criminal prosecution.*

It is not the duty nor within the authority of the managing owner of a tugboat to institute a criminal prosecution against one of the joint owners alleged to be a defaulter, and he cannot claim a credit against his co-owners for the expense of such a criminal prosecution.

*Joint owners of tugboat—Managing owner—Duty to account—Costs.*

It is the duty of a managing owner of a tugboat to account to all the owners; and when he fails in the performance of this duty, and is compelled by legal proceedings to render an account, he should be visited personally with the costs.

*Practice—Supreme Court—Assignment of errors—Rule 11 and Equity Rule 92.*

Equity Rule 92 requires the appellant to file in the court below " a brief statement of the errors he alleges to have been made by the order or decree appealed from." Rule 11 of the rules of the Supreme Court requires the appellant to " specify in writing the particular errors which he assigns, and to file the same in the prothonotary's office " of the Supreme Court. Failure to observe these two rules in equity cases may result in the appeal being non prossed.

Argued March 23, 1903. Appeal, No. 335, Jan. T., 1902, by defendant, from decree of C. P. No. 3, Phila. Co., Dec. T., 1898, No. 923, in case of Olney Croasdale v. F. Albert Von

Boyneburgk et al.   Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Bill in equity for an account.

On exceptions to the report of Edwin Jaquett Sellers, Esq., master, the court, McCARTHY, J., filed an opinion in part as follows:

The first question raised is, should the credits claimed by the accountant for disbursements, in connection with the criminal prosecution of Stotsenberg for alleged embezzlement of moneys belonging to the owners of the John Reese, be allowed?

The learned master finds as matter of law that the credits should be allowed, because the accountant, " as managing owner of the tugboat, was morally bound and legally authorized " to detect and prosecute a co-owner for embezzlement of the owners' money, and to charge the owners with the expense thereof, including fees of counsel, detectives, expert accountants, clerks, etc. ; and the subsequent abandonment of the proceedings does not relieve them, such efforts being in the interest of justice and for the special benefit of the owners.   He cites no authority, nor does he offer any reasoning in support of this novel view of the duties of a managing owner.

The Supreme Court of Pennsylvania has affirmed the decision of this court that the owners of the John Reese are tenants in common of a chattel.   It is an incident of such ownership that common consent is necessary to common enjoyment of the property, and the prior consent of each owner is necessary to bind him to any use of the chattel or expenditure on account of it.   In case of vessels, however, the employment of which is deemed by commercial nations a matter of public benefit, after the consent to the appointment of the managing owner is established, the consent of all the owners to his duly authorized acts will be presumed, and they will be bound by all contracts made by him on their behalf within the scope of his authority: Maclachlan, Merchant Shipping (4th ed.), 190.   This extends to whatever concerns the employment of the ship, as appointing its master and officers, seeing that the ship is properly repaired, equipped and manned, employing tradesmen to furnish supplies and repairs, procuring freights, preserving the

ship's papers, making necessary entries, adjusting freights and averages, disbursing and receiving moneys, keeping and adjusting the accounts between the parties interested, and the like: Abbott, Merchant Ships (14th ed.), 130; Maclachlan, Merchant Shipping (4th ed.), 186. The institution of proceedings at law, however, is not within the authority of a managing agent, being foreign to the purpose of his employment, and it has accordingly been held that he cannot pledge the credit of the co-owners for the expenses of a lawsuit: Abbott, Merchant Ships, supra, citing Campbell v. Stein, 6 Dow. 116; The Bellcairn, 5 Asp. M. C. 582. A fortiori, it is not within the scope of his authority to institute a criminal prosecution, and the consent of the owners to such action on his part cannot be presumed from the fact of his employment as managing owner. The consent of each must be shown to justify charging him with the incidental expenses. The learned master finds that the criminal prosecution against Stotsenberg was instituted and prosecuted without the authority or consent of his wife, or of the plaintiff, her assignee. He also finds that the prosecution was abandoned. It was therefore of no benefit to the owners, who could only have been benefited by it, as members of the community, through the conviction and punishment of the offender, not in their private capacity as owners, and the case not having been brought to trial, there is nothing to show that the proceeding was founded upon any proper cause. Under such circumstances, there is no reason in law or equity why any part of the expenses incurred in connection with this criminal prosecution should be imposed upon Mrs. Stotsenberg or the plaintiff. The master finds the total of these expenses to be the sum of $409.60. Credits claimed for all the items aggregating this total must be disallowed to the accountant as against the plaintiff.

The second question raised by the exception is, should the credits claimed by the accountant for the payment by him after August 17, 1897, of bills contracted on account of the employment of the John Reese prior to that date, be allowed?

The plaintiff contends that these credits should not be allowed, because "from that time, namely, August 17, 1897, the interest in said vessel changed," and he should not be charged with expenses of the boat "contracted prior to the

time he became entitled to share in the profits." This, however, is an error in fact; the interest was not changed until the plaintiff purchased Mrs. Stotsenberg's share on December 19, 1898. The date of August 17, 1897, is that upon which the accountant became the managing owner, and is fixed by the decree as the date when the accounting should begin, because it is his own stewardship of which he is required to render an account, and not that of another. The plaintiff in acquiring the ownership of Mrs. Stotsenberg's share in the John Reese, acquired also the net earnings or dividends accrued upon that share to the date of his purchase. In determining what the net earnings are, the accountant is entitled to credit for any due and proper application of the earnings of the tugboat received by him. The payment of a valid and subsisting indebtedness of the owners legitimately incurred in connection with the employment of the boat is a due and proper application of her earnings, and it is a matter of no moment when that debt was contracted. Here the validity of the debts is not questioned; the accountant has actually paid them as justly due by the owners, and he is entitled to credits for such payments, as the learned master has properly found.

On the other hand, the decree requires the defendant, Von Boyneburgk, to account for all sums of money which have been received and collected by him as managing owner from August 17, 1897, on account of the use and hire of the said tugboat or to the use of her owners. The learned master has found that since the date named the accountant received and has failed to account for $400 belonging to the owners of the tugboat, and accordingly has surcharged him properly with that amount.

The third question raised by the exceptions is, should the credits claimed by the accountant for his salary as managing owner be allowed in addition to the credits claimed by him for commissions paid to agents?

The master finds as matter of fact that at a meeting of the owners of a majority of interest in the John Reese, held in August, 1897, it was agreed that the accountant as managing owner should receive $50.00 per month for his services, and as matter of law that the owners of a majority of interest were authorized to enter into an agreement to pay the managing

owner whatever salary they might agree upon; and that Mrs. Stotsenberg and the plaintiff, as her assignee, are bound by the action of the majority.

He does not find that Mrs. Stotsenberg was present or represented at the meeting referred to; the testimony shows she was not. He does not find that the action of the meeting in fixing a salary for the managing owner was communicated to her, or that she ever had actual knowledge of it; there is nothing in the evidence from which such knowledge can be inferred. Supposing her to have had access to the managing owner's accounts, she could have gathered from them no knowledge of this matter, for his first entry of credit for salary bears date March 1, 1899, the item reading, "By accountant's wages, August 17, 1897, to March, 1899, eighteen and a half months, at $50, $925." This entry, according to its date, was made about two months and a half after Mrs. Stotsenberg had sold out her interest to the plaintiff, and ten days after the plaintiff had filed his bill in the present action praying for an account.

It has been sufficiently shown before that a majority of the owners in common of a chattel cannot bind the minority nor any single owner, without his consent. It may be that consent will be presumed in the absence of knowledge. There is nothing in the evidence on which to base any presumption that either the plaintiff or his assignor had any knowledge of this claim before the actual stating of the account before the master.

The learned master finds as a fact that no salary was ever paid to any other managing owner of said tugboat. In the absence of knowledge and consent on her part to a change in the arrangement, it would be inequitable and unjust to hold Mrs. Stotsenberg and her assignee, the plaintiff, to any different arrangement from that with which she was familiar, which had her consent and which appears to be the usual and customary arrangement in this business, namely, that the managing owner should serve without charge, and the agents of the boat should be paid a percentage upon such gross receipts as resulted from their agency.

The learned master finds as matter of fact that the accountant employed Walker and afterwards Reynolds as his successor

"merely as assistants or employees of the owners" at a commission of five per centum upon their gross collections; and, as matter of law, that he was authorized to employ them, and that his selection is presumed to have been ratified by the other owners, as no objection was made, and hence he is entitled to credit for the payments made to them. The master nowhere finds the facts upon which he bases his conclusion that the persons named were merely assistants, nor does he find the facts showing the nature of their employment and duties or the character of the work carried on by the managing owner. To ascertain these facts we must look into the evidence, and that shows that Walker, at the time he was employed about the business of the John Reese, was in business as a tugboat agent and had charge of several other tugboats besides the Reese; that he attended to his duties as agent for the Reese in the same manner as he attended to like duties for other boats; that the business of the boat was carried on in his office, the managing owner not having any office; that Walker kept accounts of her receipts and expenditures, paid the crew, paid some of the bills, hustled to get work for the boat and had general charge of her, and was paid for his services a commission of five per centum upon the gross receipts. Reynolds, his successor, performed the like duties. He acted in the same capacity to this particular boat as he did in connection with other boats which he had charge of. He was paid also a commission of five per centum, which he testified is a fair commission for the work. The accountant had a general superintendence of the business and directed Walker and Reynolds in their work; he also seems to have assisted in getting employment for the tugboat and to have paid some of the bills; but the character, amount and extent of work done by him independently of his agents does not clearly appear in the evidence.

There is no magic in a name. The facts show that whether Walker and Reynolds were what are technically known in the business as "agents" of the tugboat John Reese, or were "merely the assistants or employees of the owners," of that vessel as found by the master, they discharged such duties as are ordinarily performed by tugboat agents and were compensated in the usual way by commissions upon the gross sums

they handled.   These commissions having been paid, it would be inequitable, as already found, to charge what would virtually be a second compensation for the same services against the plaintiff, neither he nor his assignor having ever consented thereto.   The credits claimed for all payments of salary, which appear from the account filed to aggregate the sum of $1,575, should therefore be disallowed as against the plaintiff.

The fourth question raised by the exceptions is, should the costs of this suit be paid by the defendant Von Boyneburgk in his individual capacity, or in his representative capacity as managing owner of the John Reese?

The master finds as matter of law that the accountant is liable for all costs by reason of his failure to account until compelled to do so by the order of this court; and that the plaintiff should be relieved from contribution to the costs of this proceeding, as it would be inequitable to tax him, as he is free from blame and was compelled to seek redress in court.   He also affirms the eighth request for findings of law to the effect that all costs in this case shall be paid by the accountant, "but with the modification that the costs shall be paid by the said F. Albert Von Boyneburgk as managing owner, but exclusive of the right of said managing owner to charge the plaintiff with any proportion thereof."

As already stated, one of the cardinal duties of the ship's husband or managing owner is to keep and adjust accounts between the parties interested.   The owners have a constant right to inspect his accounts, "and if they are driven by his refusal or delay to seek an account in a court of equity, he will be visited with the costs and with interest on any balance of money retained in his hands for this neglect of his duty:" Maclachlan, Merchant Shipping (4th ed.), 189.   It was, therefore, Von Boyneburgk's duty to account.   His neglect or refusal to do it caused this suit.   For this dereliction of duty he should be punished by imposing upon him all the costs and interest upon the amount retained, to be paid out of his own individual pocket.   To permit him to pay these penal charges out of the funds in his hands as managing owner would be to inflict upon each of his codefendants, who had no duty to account and are not in the least default, the same punishment with the wrongdoer and thus confound the innocent with the

guilty. The master justly finds it would be inequitable to tax the plaintiff with any of the costs, as he is free from blame. It would be just as inequitable to tax them upon such of the other owners as are equally blameless.

The court entered a decree that the defendant F. Albert Von Boyneburgk pay to the plaintiff $2,317.68, and that the defendant personally pay the costs. Defendant appealed.

*Error assigned* was the decree of the court.

*Thomas Diehl,* with him *J. Warren Coulston,* for appellant.

*E. Cooper Shapley,* with him *Edwin C. Nevin,* for appellee

OPINION BY MR. JUSTICE MESTREZAT, May 4, 1903:

The facts found and the authorities cited by the learned trial judge in his opinion disposing of the exceptions to the master's report are ample to sustain the decree entered by the court below.

The owners of the tugboat, John Reese, held the property as tenants in common: Croasdale v. Von Boyneburgk, 195 Pa. 377. It appears from the evidence and was found as a fact by the master that no salary was ever paid any managing owner of the John Reese. The accountant as managing owner employed two agents of the tugboat who performed the duties as such and were compensated by commissions upon the gross sums they handled. The business of the boat was carried on at the office of one of the agents, the managing owner having no office. The agents kept the accounts of the boat's receipts and expenditures, paid the crew, paid some of the bills, solicited and obtained business for the boat, and had general charge of her. It was found as a fact that it was the usual and customary arrangement in the business that the managing owner should serve without charge and the agent of the company should be paid a percentage upon such gross receipts as resulted from the agency. It thus appears that under the facts disclosed by the evidence and found by the court below, the duties of the managing owner were not performed by Von Boyneburgk but by the agents who received the commissions to which he claims he is entitled for attending to the affairs or the business of the boat.

The above recited facts would clearly preclude the accountant from claiming a salary for his services as managing owner. He relies, however, on an alleged agreement by the owners of a majority in interest in the tugboat as the basis of his claim for compensation for his services. The evidence shows that neither Mrs. Stotsenberg nor her assignor, the plaintiff, was represented at any meeting when the alleged agreement was made, nor that they, or either of them, had any knowledge that such an agreement had been entered into with Von Boyneburgk. It is equally clear that neither the plaintiff nor his assignor acquiesced in the agreement or consented that Von Boyneburgk should receive a salary for his services as managing owner. But if it be conceded that the majority interest agreed to compensate him for his services and that the minority interest could be bound thereby, the managing owner, however, would be compelled to perform those services before he would be entitled to the compensation. This, as we have seen, he did not do. The two agents conducted the business and they were paid by commissions upon the gross sums they handled. As said by the court below, these commissions having been paid, it would be inequitable to charge what would virtually be a second compensation for the same services against the plaintiff, neither he nor his assignor having ever consented thereto. It is quite obvious that the appellant did not regard himself as entitled to, nor expect, compensation for his services from the fact that his account shows that he made no charges for them against the boat until more than eighteen months after he assumed the management of the boat and after Mrs. Stotsenberg had sold her interest and this proceeding had been instituted. This taken in connection with the fact that an agent performed the duties and was compensated in the manner in which the managing owner would be paid were he to receive compensation, is convincing proof that the appellant's right to claim payment for services did not occur to him until the appellee compelled him to account for his management of the business of the boat.

The authorities cited by the trial judge sustain him in holding that it was not the duty nor within the authority of the appellant as managing owner to institute a criminal prosecution against Stotsenberg; and hence as against the non-assenting owner of an interest in the vessel, he is not entitled to a

credit in his account for the costs expended in the litigation. We can see no force in the suggestion of the master that the appellant as managing owner was morally bound to detect and prosecute a copartner for an alleged embezzlement which occurred some time prior to the date when the affairs of the boat were placed in the hands of the appellant. The purpose of a criminal prosecution is to punish the offender for violating the laws of the commonwealth, and not to enforce the payment of money nor, as in civil proceedings, to restore to the owner the property of which he has been defrauded. The criminal process of the court should not be invoked for any such purpose. While the appellant, like any other person, could have instituted the prosecution against Stotsenberg, it was clearly not his duty as managing owner to do so. The scope of his employment did not include a duty nor the authority to prosecute at the expense of the boat owner a delinquent or defaulting owner of a minority interest for the violation of the criminal laws of the state. Such action might be most commendable in him as a citizen who is looking after the morals of the community, but as the managing owner of a tugboat his employers would doubtless prefer that he should not consider it a part of his employment to institute criminal prosecutions against them, or if he did so, that they should not be compelled to reimburse him for such services or protect him against costs he was properly condemned to pay.

The costs of this proceeding were properly disposed of by the court below. It was clearly the duty of the managing owner to account not only to the plaintiff but to all the owners, and when he failed in the performance of this duty and was compelled by legal proceedings to render an account he should be visited personally with the costs.

No assignments of error were filed in this case and the appellee would have been entitled on motion to a judgment of non pross. under rule 11. The learned counsel for appellant misapprehended the purpose of rule 92, which requires the appellant to file in the court below " a brief statement of the errors he alleges to have been made by the order or decree appealed from." This, however, does not relieve the appellant from his duty under rule 11 to "specify in writing the particular errors which he assigns, and to file the same in the prothonotary's

office " of this court.    On an appeal, we can consider only such errors in the record as have been properly assigned under the last mentioned rule.    A failure to observe either of these rules may, at the instance of the other party or on the court's own motion, impose on the offending party the penalty of having his writ non prossed.

The decree is affirmed.