DANIEL v. RAILROAD.

(Filed November 22, 1904.

1. MALICIOUS PROSECUTION—*False Imprisonment—Principal and Agent—Railroads.*

> The cashier in the local office of a railroad is without authority to cause the arrest of a person whom he suspects of having stolen money from the office and the railroad company is not liable therefor, there being no proof of its previous authority or subsequent ratification.

2. PRINCIPAL AND AGENT—*Evidence—Declarations.*

> The authority of an agent to bind his principal cannot be shown by the acts or declarations of the agent.

ACTION by S. M. Daniel against the Atlantic Coast Line Railroad Company, heard by *Judge M. H. Justice,* at March Term, 1904, of the Superior Court of PITT County.

This is an action for malicious prosecution and false arrest and imprisonment. The plaintiff was accused and prosecuted by the agent of the defendant at Greenville of stealing money from its office at that place of which the agent had charge. The testimony necessary to be stated was in substance as follows: The plaintiff is a young man thirty years of age, a native of Pitt County and now a resident of Goldsboro. On the day of his arrest, but prior thereto, he went

to the depot of the defendant company in Greenville to take
the train for Goldsboro via Kinston, and finding the passen-
ger depot closed he went to the freight depot, inquired
about his train and was invited into the office by Atkinson,
the agent of defendant.  Plaintiff went behind the rail and
sat by the stove.   Three or four people came in and then
went out.   Atkinson was counting money and putting it in a
package.   He got another man to count it and he put it in
an envelope and then put it in a drawer, locked the drawer
and went to supper.   Plaintiff went out behind him in about
three minutes, leaving several white people and one colored
man in the office.   Defendant's train was late, and when it
came the plaintiff boarded it and went to Kinston, where he
missed connection with the Atlantic and North Carolina
train and was forced to spend the night at Kinston.   During
the night a call came from the depot at Greenville for the
depot at Kinston by phone—agent at Greenville calling
agent at Kinston; connection was made and immediately
after this the agent of defendant at Kinston went to the
hotel, called for a policeman and told him he had orders to
arrest Daniel, and then with the policeman the agent went
to his room at the hotel, demanded admission, and on being
admitted to the room the agent of defendant company di-
rected his search and also his arrest until the agent at Green-
ville could be communicated with, the agent at Kinston
stating that the arrest was for larceny of money from the
company in Greenville.   No warrant was sworn out for the
arrest, and all was done by agents of defendant company
and the policeman at their instance.   The agent at Green-
ville came down town, saw the chief of police at Greenville
and asked him to go to the phone office with him; they went
to the phone office and the agent (Atkinson) called for the
policeman in Kinston, and at his request the Greenville po-
liceman did the talking.   Atkinson was notified that no war-

rant being at that time sworn out for plaintiff's arrest the policeman declined to order his arrest, but afterwards the chief of police of Greenville, at Atkinson's request, called up the policeman at Kinston over the phone and requested him to arrest plaintiff, which he did, being assisted by the defendant's agent at Kinston, as above stated. The arrest was made in plaintiff's room in the hotel late at night after he had retired, and he was subjected to the most thorough search and also his room, Meacham, the defendant's agent at Kinston, and several policemen being present and taking part in the search. Plaintiff was taken through the hotel office and down the public street to the guard-house where he was detained a half or three-quarters of an hour. No evidence of plaintiff's guilt being discovered he was released, after a policeman had communicated with the agent at Greenville and had been told to let him go. On Sunday morning following the arrest and search, the agent at Greenville applied to the Mayor of Greenville, who was local counsel for defendant company, for a warrant for the plaintiff, charging him with the larceny of defendant company's money from the possession of the agent; the warrant was issued and plaintiff arrested under it on his return to Greenville next day; this was done after he had once been arrested and searched by direction of agent at Greenville, and at his direction released. On application, the case was removed for trial to another justice. At the trial delay was caused by the failure of the agent to appear. He was afterwards seen coming out of the office of the local attorney of defendant company and soon appeared at the trial. After hearing all the evidence the justice dismissed the warrant, finding no probable cause. Atkinson, at whose instance and request plaintiff was arrested at Kinston and afterwards in Greenville, was cashier in the defendant's office in the latter place. His duties were to collect money for freight, give

receipts therefor, sell tickets to passengers, take care of the money received by him and forward the same to the treasurer of the defendant company at Wilmington.   Plaintiff testified that he did not take the money or voucher.   Money to the amount of $132.45 and a railroad voucher for $37.50 were stolen from the cash drawer in the railroad office the night the plaintiff was there.

At the close of the testimony for the plaintiff, the defendant moved to dismiss the action under the statute.   The motion was granted and judgment rendered accordingly. Plaintiff excepted and appealed.

*Fleming & Moore,* for the plaintiff.
*Skinner & Whedbee* and *Pou & Fuller,* for the defendant.

WALKER, J., after stating the facts.   The foregoing statement of the testimony is sufficient to present the point upon which the case turns, namely, the authority of the agent of the defendant to cause the arrest to be made.   We are not concerned so much with the manner in which the arrest of the plaintiff was made as we are with the question whether the defendant, who was the principal of Atkinson and Meacham, is to be charged with liability for their tortious acts.   That their conduct towards the plaintiff was inexcusable, if not criminal, and justly provokes the resentment of every good and law-abiding citizen against them, may be freely admitted.   The circumstances under which they pursued this man, without the warrant of the law, even to his bed-chamber and at the silent hour of midnight arousing him from his peaceful slumbers, invading the sanctity and privacy of his room, which the law surrounded with its protection as much so as if it had been his home or his castle— subjecting him to such indignities as no self-respecting man could submit to, even under compulsion, without feeling that

he had been humiliated if not degraded by them; marching
him through the office of the hotel and down a public street
where any and all might see the infamy and disgrace which
they had fastened upon him—all these things and more they
did which made their offense against him, if the evidence be
true, a very serious one, and to him they and all who par-
ticipated in causing his arrest are responsible before the law,
and they must reckon with him if he sees fit to call them to
account.   But we must not allow any feeling of indignation
at the grievous wrong inflicted upon the plaintiff (which can
not be too severely condemned, if, as we must assume, he is
an innocent man) to withdraw our attention from those
principles of that same law by which the defendant's rights
are guarded.   The excesses of Atkinson and Meacham do
not establish the defendant's liability.   That can be shown
only by proof that the defendant authorized the acts to be
done or that, after they were done, it ratified them.   An
agent's authority to bind his principal cannot be shown by
the agent's acts or declarations.   *Francis v. Edwards,* 77
N. C., 271; *Gilbert v. James,* 86 N. C., 244; *Taylor v.
Hunt,* 118 N. C., 168; *Willis v. Railroad,* 120 N. C., 508.
The authority must first be shown before the acts done or
declarations made in pursuance of the authority can bind the
principal or impose any liability whatever upon him.   It is
not pretended in this case that there was any express author-
ity or that there was any ratification of the acts of the alleged
agents.   The plaintiff's sole contention is that what Atkin-
son did at Greenville and Meacham at Kinston was within
the line of their duty and the scope of their employment,
and therefore they had implied authority from the defend-
ant to do what they did, upon the theory, we suppose, that
every authority carries with it, or includes in it, as an inci-
dent, all the powers which are necessary, proper or usual
as means to effectuate the purposes for which it was con-

ferred, and that, consequently, when an agency is created for a specified purpose or in order to transact particular business, the agent's authority, by implication, embraces the appropriate means and power to accomplish the desired end. He has not only the authority which is expressly given but such as is necessarily implied from the nature of the employment. Story on Agency (9 Ed.), sec. 97. This is the general rule and the doctrine of *respondeat superior* is a familiar one. But in our opinion it has no application to the facts of this case. If we should hold that it is so broad in its scope as to include a case like this one, it would lead to most dangerous consequences. For us to say that an agent can by his acts subject his principal to liability in damages to any one injured by his said acts done when he was not about his master's business and had no express or implied authority to do them, but was merely seeking to avenge a supposed wrong already committed or to vindicate public justice, would be carrying the doctrine of *respondeat superior* far beyond its acknowledged limits. A servant entrusted with his master's goods may do what is necessary to preserve and protect them, because his authority to do so is clearly implied by the nature of the service, but when the property has been taken from his custody or stolen and the crime has already been committed, it cannot be said that a criminal prosecution is necessary for its preservation or protection. This may lead to the punishment of the thief or the trespasser, but it certainly will not restore the property or tend in any degree to preserve or protect it. It is an act clearly without the scope of the agency and cannot possibly be brought within the limits of the implied authority of the agent. It would seem that so plain a proposition should need neither argument nor authority to support it, but we are abundantly supplied with both in the cases upon the subject. It is not intended to assert that a principal cannot

be held responsible for the willful or malicious acts of the agent when done within the scope of his authority, but that he is not liable for such acts, unless previously expressly authorized or subsequently ratified, when they are done outside of the course of the agent's employment and beyond the scope of his authority, as when the agent steps aside from the duties assigned to him by the principal to gratify some personal animosity or to give vent to some private feeling of his own (*McManus v. Crickett,* 1 East., 106) and, as is forcibly stated by *Lord Kenyon* in the case cited, quoting in part from *Lord Holt:* "No master is chargeable with the acts of his servant but when he acts in the execution of the authority given him. Now when a servant quits sight of the object for which he is employed, and without having in view his master's orders pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him and his master will not be answerable for his acts."

A very able and learned discussion of the question in this case will be found in *Allen v. Railroad,* L. R. 6 Q. B., 65, by *Blackburn, J.,* one of the most eminent of the English judges of his time. The case was apparently well argued on both sides. The judges delivered separate opinions. We quote so much of the leading opinion by *Justice Blackburn* as will show the full result of the decision: "There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony or of recovering it back and an act done for the purpose of punishing the offender for that which has already been done. There is *no implied authority* in a person having the custody of property to take such steps as he thinks fit to punish a person who he supposes has done something with reference to the property which he has not done. The act of punishing the offender is not anything done with reference to the property; it is done merely for the purpose of vindicating justice. And in this respect

there is no difference between a railway company—which is a corporation—and a private individual; if the law were that the defendants are responsible for the act of their booking-clerk·in giving the plaintiff into custody on an unfounded charge, every shopkeeper in London would be answerable for any act done by.a shopman left in his shop who chose to accuse a person of having attempted to plunder the shop, every merchant would be responsible for a similar act of his clerk, and every gentleman for the act of his butler or coachman." The case of *Allen v. Railroad* was cited with approval and reviewed at some length in *Carter v. Machine Co.,* 51 Md., 290, 34 Am. Rep., 311 (opinion by *Alvey, C. J.*), and the doctrine thus summed up: "From these authorities it is quite clear that in a case like the present, where the corporation is sought to be held liable for the wrongful and malicious act of its agent or servant in putting the criminal law in operation against a party upon a charge of having fraudulently embezzled the money and goods of the company, in order to sustain the· right to recover it should be made to appear that the agent was expressly authorized to act as he did by the corporation. The doing of such an act could not, in the nature of things, be in the exercise of the ordinary duties of the agent or servant entrusted with the custody of the company's money or goods; and before the corporation can be made liable for such an act it must be shown either that there was express precedent authority for doing the act, or that the act has been ratified and adopted by the corporation." That case was cited and followed in several other decisions in the same Court to the like effect. *Improvement Co. v. Steinmer,* 72 Md., 316, 8 L. R. A., 846; *Railroad v. Brewer,* 78 Md., 406, 27 L. R. A., 63; *Kirk v. Garrett,* 84 Md., 385; *T. R. Co. v. Greene,* 86 Md., 161. The following cases presented the same question precisely as we now have under consideration and were decided in the same way as

those already cited. *Stevens v. Railroad,* 10 Exc., 351; *Pressley v. Railroad,* 15 Fed. Rep., 199; *Mali v. Lord,* 39 N. Y., 381, 100 Am. Dec., 448; *S. E. T. Co. v. Green,* 25 Ill. App., 106; *Croasdale v. Von Boyneburgh,* 206 Pa., 15; *Hershey v. O'Neill,* 36 Fed. Rep., 168. In *Dally v. Young,* 3 Ill. App., 38, the plaintiffs in error were sued for malicious prosecution by Young, in that Dally, a subagent of Lathrop who was agent for the Remington Machine Company, had, at the instigation of Lathrop and the company, prosecuted him criminally for embezzlement of the funds of the company, of which charge he was acquitted. There was no evidence that the prosecution had, previous to its institution, been expressly authorized or afterwards adopted or ratified by Lathrop or the company. The Court thus referred to the principle governing the case: "It is true, Lathrop was the general agent of the company at Chicago and that Dally was a subagent at Bloomington, and subject to his jurisdiction in all matters pertaining to the business of the company, but this circumstance of itself would not make him liable for a criminal prosecution commenced by Dally without his knowledge or consent. Where an agent institutes a malicious prosecution of his own head, and without the instigation or direction of his principal, the latter will not be liable for the same, unless he adopts and continues the same with knowledge of all the circumstances." And in *Edwards v. Railroad,* L. R. 5 C. P., 446, the Court took the same view of the law upon facts substantially similar. "A servant of a railway company has no implied authority as such to give a person into custody on a charge of felony. It is the duty of any one who sees a person committing a felony to give him into custody, and it cannot be assumed that Holmes was acting in this matter as the company's servant, and not in accordance with that general duty. If the defendants are held liable here, it will follow that every servant has authority to act in this

way for his master, and to render him liable should he arrest a man wrongfully. It is said that Holmes was in charge of the property which he believed was being stolen, and from that fact it may be inferred that he had authority to act as he did, but the same would apply to a shopman in charge of a shop or a servant in charge of the house, and yet it has never been suggested that if such a servant gave a person in charge for felony the master would be liable." See also, Pollock on Torts (6 Ed.), pp. 89, 90.

The principle we have stated as applicable to the facts in this record and as established by the authorities cited, has met with the approval of this Court in cases closely resembling the one in hand, and in other cases where it was adopted by analogy. Quoting from Wood on Master and Servant, 546, the Court in Willis v. Railroad, 120 N. C., 508, says: "In the absence of express orders to do an act, in order to render the master liable the act must not only be one that pertains to the business, but must also be fairly within the scope of the authority conferred by the employment. For illustration, a clerk to sell goods suspects that goods have been stolen and causes an arrest to be made. The master is not liable for the imprisonment or for the assault, because the arrest was an act which the clerk had no authority to do for the master, either express or implied."

In a case where the agent of the defendant company had slandered the plaintiff, the Court stated the principle as follows: "In a vast majority of the cases, the principle is recognized that in some way the company must authorize or approve the tortious act of its agent, and it would be unreasonable to hold the company liable on a bare presumption, in the absence of allegation or any proof of authority or ratification." *Redditt v. Manufacturing Company,* 124 N. C., 100. Where the defendants had placed a claim against the plaintiff in the hands of their attorney for collection and

DANIEL *v.* RAILROAD.

the attorney caused the plaintiff to be arrested, the Court held that the defendants were not liable to the plaintiff in an action for malicious prosecution and false arrest, as the act of their attorney was not within the general course and scope of his employment and therefore he had no implied authority to do the act, and as the defendants had not expressly authorized the act to be done or in any way ratified it. *Moore v. Cohen,* 128 N. C., 345. That case would seem to be decisive of this one, and it is fully sustained by the decision in *Burna v. Albert,* 4 Fed. Cases, No. 2170, in which *Chief Justice Taney* delivered the opinion. The cases cited in the brief of plaintiff's counsel may, we think, be distinguished from our case. The Court was influenced in the decision of them by their peculiar facts, which do not exist in the case at bar. It is not necessary for us to review or comment upon them, except to say that the Court thought there was in each of them some evidence tending to show authority from the company for the commission of the wrongful act.

It may then be gathered from the books as a general rule, which is clearly applicable to the facts of this case, that if the servant, instead of doing that which he is employed to do does something else which he is not employed to do at all, the master cannot be said to do it by his servant and therefore is not responsible for what he does. It is not sufficient that the act showed that he did it with the intent to benefit or to serve the master. It must be something done in attempting to do what the master has employed the servant to do. *Mitchell v. Crasweller,* 76 E. C. L., 246; *Limpus v. L. G. O. Co.,* 32 L. J. (Exch.), 34. Nor does the question of liability depend on the quality of the act but rather upon the other question, whether it has been performed in the line of duty and within the scope of the authority conferred by the master. The facts of this case do not bring it within the principle. There is no ground for saying that what was

done by the agent was in the ordinary course of the business of the company, nor that it was for its benefit, except in so far as it is for the benefit of all the citizens of the State that a criminal should be prosecuted, convicted and punished. If the agent acted from a sense of the duty which rests on every one to give in charge a person who he thinks has committed a felony, his conduct, while commendable, would in no way be connected with the defendant so as to fasten liability upon it. *Edwards v. Railroad,* L. R. 5 C. P., 448.

In *Croasdale v. Von Boyneburgh, supra,* the Court says: "The purpose of a criminal prosecution is to punish the offender for violating the laws of the Commonwealth and not to enforce the payment of money, nor, as in civil proceedings, to restore to the owner the property of which he has been defrauded. The criminal process of the Court should not be invoked for any such purpose. While the appellant, like any other person, could have instituted the prosecution against Stotsenberg, it was clearly not his duty as managing owner to do so." The Court in *Pressley v. Railroad, supra,* states the principle with equal emphasis: "The question is, can such action on his part be held to be within the scope of his agency and in the course of his employment? There may be, and the books recognize some difficulty in determining what acts of an agent or employee are properly within the range and course of his employment; but to say that to put the criminal law in operation against a party on a charge of larceny of the property of the corporation is within the scope of his agency and in the course of his employment is a proposition which in the light of the decided cases cannot be maintained."

There can be no doubt that the plaintiff has been very illused and grievously wronged, as he was most improperly arrested, but, unfortunately, he has sued an innocent party instead of suing those who were the real authors and perpe-

DANIEL *v.* RAILROAD.

trators of the wrong done to him. We have assumed of course that they did the wrong to him, as we are required by an imperative rule, upon a motion to nonsuit or a demurrer to evidence, to take as true not only every fact which there is evidence tending to establish, but also to consider all such fair and reasonable inferences of fact as the jury, if trying the case, might properly have drawn from the evidence. It may be that those parties, if they had been sued, would have been able to show quite a different state of facts from the one with which we have now to deal, and therefore what we have said must be taken as based entirely upon the hypothesis that the facts are correctly given in the testimony introduced by the plaintiff.

Since this opinion was written we have examined a case recently decided by the Supreme Court of Pennsylvania, in which we find that Court reached the same conclusion we have in this case upon facts substantially similar, and supported its decision by cogent reasoning and by the citation of many and weighty authorities. *Markley v. Snow,* 207 Pa., 447, 64 L. R. A., 685.

Finding no error in the ruling of the Court upon the law, the judgment of nonsuit must stand.

No Error.