AUGUST GOVASKI v. JOHN B. DOWNEY AND THE WABASH RAILROAD COMPANY.

100   429|
140   45|
100   429
d151   18

*Malicious prosecution—Legal advice—Justification—Complaint by agent—Liability of principal.*

1. Where, in an action for malicious prosecution, the evidence is conflicting as to whether the defendant made a full and fair statement to the magistrate who issued the warrant of all of the facts within his knowledge tending to cause or to exclude belief in plaintiff's guilt, the question whether he made such a disclosure should be submitted to the jury.[1]

---

[1] For cases bearing upon the *effect* of legal advice as a defense in actions for malicious prosecution, see *Harris v. Woodford*, 98 Mich. 147, and note.

2. Where in an action for malicious prosecution against a railroad company and one of its employés for the arrest of the plaintiff, on the complaint of such employé, for the alleged larceny of property belonging to the company, there is no evidence showing or tending to show that the employé was instructed by any officer or employé of the company to make the complaint, or that he was acting in the line of his duty to the company in making it, a verdict is properly directed in favor of the company; citing *Travis v. Insurance Co.*, 86 Mich. 288.

Error to Wayne. (Gartner, J.) Submitted on briefs April 12, 1894. Decided May 22, 1894.

Case. Plaintiff brings error. Reversed as to defendant Downey, and affirmed as to the other defendant. The facts are stated in the opinion.

*H. P. Davock* (*E. F. Bacon,* of counsel), for appellant.

*Alfred Russell,* for defendants.

LONG, J. This is an action for malicious prosecution. The case was tried before a jury, and a verdict directed in favor of the defendants. Plaintiff brings error.

It appears that on July 19, 1892, the defendant Downey made a complaint in writing before one of the police justices of the city of Detroit, charging the plaintiff with the larceny of a wheelbarrow, the property of the defendant railroad company. The warrant was issued by the police justice, and the plaintiff, while not actually arrested, was brought before the justice, and answered the complaint, and upon trial was discharged.

Upon the trial of the case the court below instructed the jury that there was nothing to connect the railroad company with the complaint made by Downey; and, also, that there was nothing to show that Downey did not honestly and fairly submit the matter to the justice, or that he was actuated by malice.

The facts, as they appeared upon the trial by the testi-

mony of the plaintiff and his witnesses, are as follows:
That on the 16th day of July, 1892, the plaintiff borrowed
a wheelbarrow from the night watchman of the railroad
company, and said that he would return it in the morn-
ing; that he did not return it as agreed; that, on the 18th,
Mr. Hill, who was local freight agent of the railroad com-
pany, sent for him, and asked him what he had done with
the wheelbarrow; that he replied that he had borrowed it
from the night watchman (Mr. Hoeflein), and had returned
it in the morning, and that it was then in the warehouse,
when Mr. Hill said, "If you don't bring that wheelbarrow
back again by Monday noon, you will be in trouble;" that
he worked until Monday night, when Mr. Hill sent him
an order of discharge from the service of the company;
that, when he went to Hill's office on the 18th, defendant
Downey was there, and he told Downey that he had brought
the wheelbarrow back, and that it was in the warehouse;
that Downey went with him to the warehouse, and he
pointed out the wheelbarrow which he had returned.
Plaintiff also testified to his arrest and discharge by the
police court.    Mr. Hoeflein testified that he was the night
watchman; that he saw the plaintiff bring the wheelbarrow
back, and so advised defendant Downey; that he also told
Mr. Hill of that fact, when Hill said, "Well, it is all right;
the wheelbarrow ain't here;" that Mr. Hill at that time
was local freight agent for the railroad company, and had
charge of all matters concerning the depot, and charge of
the company's property.

The defendants called the police justice, who testified
that defendant Downey came before him on July 19, and
presented the facts against the plaintiff.    The police justice
said further:

"I examined Downey at the time, and determined to
issue a warrant against Govaski.    I made that determina-

tion upon my own responsibility, based upon the statements Downey made to me."

Upon cross-examination, he was asked to state what facts Downey stated to him at that time before the warrant was issued, and in answer said:

" My recollection is that he stated that the wheelbarrow was the property of the Wabash Railroad Company; that he was special agent for that company; that he had learned that the defendant [Govaski] had got a wheelbarrow, and that he had seen him in the presence of some one élse, and accused him of taking it, and that Govaski admitted that he had taken it, and Downey gave him a couple of days to return it, and he had not returned it."

Andrew Sine was called as a witness upon the part of the defendants, and testified that he was the day watchman of the defendant company; that the wheelbarrow disappeared, and he was told that Govaski had taken it away; that it had never been returned; and that he stated to Downey that it had not been returned.

Another employé of the defendant company testified that the plaintiff took the wheelbarrow away, and that he notified Mr. Hill of the fact.

Mr. Hill testified that, learning that the wheelbarrow had been taken away, he sent for plaintiff, and told him he must return it, or he would have trouble, and it must be returned within 48 hours; that Downey was present at the time of this talk. Mr. Hill further testified that after that he saw the witness Hoeflein, and was told by him that plaintiff had returned the wheelbarrow; that Downey was not present at that conversation, but that he told Downey what Hoeflein had said, and that this was the same day he had the talk with plaintiff and Hoeflein; that he thereafter discharged the plaintiff from the employ of the railroad company.

The police officer who had the warrant testified that he

notified the plaintiff to appear before the justice, and that plaintiff appeared at the time he was notified to be there.

Defendant Downey testified that he was a watchman for the defendant company at the time of this occurrence, and was told July 16, by the foreman of the warehouse, that he had lost a wheelbarrow, and could not find it; that he inquired for it, and found that the plaintiff had taken it home on the night of the 14th; that he went to the freight agent (Mr. Hill), and stated the case to him, who sent a boy for Govaski to come in; that Hill asked the plaintiff if he had taken the wheelbarrow home, and he said he had, but had brought it back again; that Hill told him he would give him two days to bring it back, or he would get himself into trouble; that he waited two days for plaintiff to bring it back, and on the morning of the 19th went down and stated the case to the police judge. Witness says:

"I told the judge that we had lost a wheelbarrow, and that Ryan had seen this man going away with the wheelbarrow; that Sine could not find it; that it was not there; and that Nichols had seen him with the wheelbarrow between those two streets in that alley, and called to him, but he did not pay any attention to him; and I also stated to him that Govaski claimed that he fetched the wheelbarrow back, but did not; and the judge gave me a complaint, and I took it to the clerk, and the clerk made the complaint."

This is substantially all the testimony given in the case.

The claim of defendants' counsel is that Downey could not be held liable, for the reason that he stated to the police justice all the facts within his knowledge, and upon which statement the justice testified that he acted upon his own responsibility. It will be seen that the plaintiff testified that he told Downey where the wheelbarrow was, and pointed it out to him. This statement is not denied

by Downey; neither does he deny that he was told by Hoeflein, and also by Hill, who obtained his information from Hoeflein, that the latter claimed to have seen Govaski bring it back; and it does not appear from Downey's statement that he communicated these facts to the police justice. On the other hand, he admits that, while he told the justice of Govaski's claim that he brought the wheelbarrow back, yet he (Downey) told the justice that Govaski did not bring it back. The testimony of the police justice does not show that he had any recollection of being told by Downey of these circumstances, but simply of being advised that Govaski had admitted having taken the wheelbarrow, had been given a certain length of time to return it, and had not done so. We think the court was in error in directing the jury that no recovery could be had as against Downey. That should have been left to them. If the police justice gave in detail all that Downey stated to him, then Downey did not state the case fully to the justice. There were other facts within Downey's knowledge that he should have stated in order to relieve himself of the responsibility of the arrest. It cannot be said that, if the justice had known all that Downey knew, he would have issued the warrant for the arrest of the plaintiff. It was a question of fact to determine whether defendant Downey had made a full and fair statement of the facts in the case to the justice.

In *Webster v. Fowler*, 89 Mich. 304, it was said:

"It is a well-established rule of law that the advice and concurrence of a public prosecutor is not a good defense to an action for malicious prosecution unless it appears that the defendant fully and fairly disclosed to such officer everything within defendant's knowledge which would tend to cause or to exclude belief in plaintiff's guilt; and whether the defendant did make a full and fair disclosure to the district attorney was a matter for the jury to determine, and not for the trial court or this Court."

The defense made for the railroad company is that the relation of Downey to the company was not such as to make it liable for Downey's act in making the complaint. The claim upon the part of plaintiff's counsel is that Downey was a detective in the employ of the railroad company, and, as such, was in the office of Hill, who was the local freight agent of the company; that Downey was governed entirely by Hill; and that from these facts it must be held that Downey was acting in the line of his duty in making the complaint for the larceny of the defendant company's property, and that the jury would be authorized in finding the company liable. There is no evidence in the case that Mr. Hill, who had general charge of the company's property, ever directed Downey to make the complaint, or suggested to him that the complaint should be made. So far as Hill is concerned, it only appears that he proposed to discharge plaintiff from the defendant company's employ. It does not appear, either, from any testimony in the case, that Downey was instructed by any officer or employé of the company to make the complaint. Neither does it appear what Downey's duties were. In the record he is sometimes called a detective for the company. He says of himself that he was a watchman. As to what authority he had to make this complaint there is no proof. We think there was nothing showing or tending to show that he was acting in the line of his duty to the defendant company in making the complaint, or that his employment was such that it became his duty to the company to make it.

In *Travis v. Insurance Co.*, 86 Mich. 288, it appeared that Patton, the State agent of the insurance company, made a complaint against Travis for obtaining money by false pretenses from the company. In a suit brought by him against the company for false imprisonment, the court directed a verdict for the defendant. It was said

by the Court that the complainant did not show that Patton was acting as agent for the company in making it; that plaintiff introduced no evidence of direct authority conferred upon Patton to make the complaint, nor of ratification of his act in so doing.    Mr. Patton testified that he acted individually, with no authority from the defendant, and wholly upon his individual authority. The court below was sustained.

Had there been any evidence in the present case showing or tending to show that Downey acted in the line of his duty under his employment in making this complaint, there might be some question whether the court should have taken the case from the jury as to the defendant company; but we think, under the evidence, the court properly directed that the defendant company could not be held liable.    *Bank v. Owston,* L. R. 4 App. Cas. 270; *Edwards v. Railway Co.,* L. R. 5 C. P. 445.

For the errors pointed out, the judgment will be reversed, with costs, as to defendant Downey, and affirmed, with costs against the plaintiff, as to defendant railroad company.

The other Justices concurred.