THE PRESIDENT, MANAGERS AND COMPANY
OF THE BALTIMORE AND YORKTOWN TURN-
PIKE ROAD *vs.* FLETCHER GREEN.

*Malicious Prosecution—When Corporation Not Liable for an Arrest
Ordered by an Agent.*

A turnpike company is not liable in an action for malicious prosecu-
tion for the arrest and prosecution of plaintiff which was ordered by
a gatekeeper for non-payment of tolls, when such agent was not
authorized to institute the proceeding nor acted within the scope of
his employment in so doing, and when his act was not ratified by
the company.

Appeal from the Circuit Court for Harford County (WAT-
TERS, J.)   The plaintiff recovered a verdict below for $500.

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, BRISCOE, PAGE and BOYD, JJ.

*George L. Van Bibber* and *Milton W. Offutt*, for the ap-
pellant.

To sustain the right to recover, it should be made to ap-
pear that the agent was expressly authorized by the cor-
poration to act as he did, or that the Act was done *bona fide*
in pursuance of a general authority in relation to the sub-
ject of it, or the Act was subsequently ratified and adopted
by the corporation. *Central Railway Co.* v. *Brewer,* 78 Md.
401; *Carter's case,* 51 Md. 290.   The plaintiff does not pre-
tend that Bowen had been expressly authorized by either
the president or by any of the directors, or by any of
the general officers of the corporation, to prosecute the
plaintiff or any other person who might undertake to
evade the payment of its tolls, but he does contend
that Bowen in causing the arrest of Green, was acting
within the scope of his employment, and, therefore, he
had implied authority so to do.   The only proof in the

record on the subject of Bowen's employment, is that on September 4th, 11th and 17th, he was the gatekeeper at the Towson gate, and told Green he was charging toll, and that he was employed as toll-gatherer at the second gate from Baltimore.   This contention we submit is untenable.   In *Carter's case* the agent who caused plaintiff's arrest for embezzling the company's money and goods, was employed by the company as its agent, and as such was entrusted with the custody of its money and goods, and this Court held that such agent in causing the arrest, was not acting within the scope of his employment, and without proof of express authority or subsequent ratification, the plaintiff was not entitled to recover.   In *Brewer's case* the driver, treasurer and superintendent of a street railway company, assisted in the arrest of the plaintiff for passing a counterfeit nickel, the superintendent swearing to the charge, and this Court held that the plaintiff was not entitled to recover.

If these parties were not acting within the line of their duties or within the scope of their employment, then it is simply impossible to say that a toll-gatherer, whose sole duty it is to receive tolls from persons using the pike, can, by implication, be authorized to put the criminal law in operation against a party who violates the provisions of the Act of 1890, in evading tolls by passing around the tollgate. It is argued that if the Court should conclude Bowen was not acting within the scope of his authority, yet there was express authority from defendant, because Col. Offutt, its counsel, read to Bowen the Act of Assembly making it a misdemeanor for a person to evade tolls by passing around the gate, without advising or telling him to have Green arrested, and that the counsel, at Bowen's request, showed the same law to the magistrate, without comment.   It is clear from the testimony, that the most that counsel did, was to explain to Bowen, in a general way, what the law was, and that parties who evaded payment of tolls were *liable to arrest.*   Such a general conversation could not be construed into an express authority, even if he had power

to grant such authority ; but we submit that counsel had no power to give to Bowen the company's authority to put the criminal law in operation against Green.    If the company had ever given Col. Offutt authority to invoke the aid of the criminal law in its behalf, such a fact does not appear in the record, but if it had, while Col. Offutt might then have made an affidavit, required to put the criminal law in operation, he had no power or authority to authorize any one else to do so.    If Bowen had no express authority, and if no such authority could be implied, and there being no evidence that appellant ever adopted or ratified his act, then there was error in the Court's refusing the plaintiff's first prayer.

*John Grason* (with whom were *Stevenson A. Williams* on the brief ), for the appellee.

Bowen, the appellant's toll-gather, in the discharge of his duties of collecting toll from all persons passing through or around his gate, had an implied authority to do whatever the appellant could do for that purpose, in order that no one refusing or avoiding his gate should escape paying. The toll-gatherer is the officer recognized by the charter of the appellant as clothed with this duty of collecting tolls. His duties are defined in the following language (Act 1804, chapter 515, 20) : "It shall be lawful for them " (the said respective companies), " to appoint such and so many toll-gatherers as they shall think proper to collect and receive, of and from all and every person and persons using said road, the tolls and rates hereinafter mentioned, and to stop any person" * * " from passing through the said gate or turnpikes, until they should have respectively paid the same." The next section of said Act authorizes the company to establish scales at their gates ; and the toll-gatherers, if they suspect greater weight at any time than by law allowable, to stop the vehicles having such weights, and cause their weight to be ascertained ; and those refusing to drive upon said scales to weigh, are to be subjected to fines.    Section 27 provides

additional penalties for those attempting in divers ways to evade the payment of toll, and the toll-gatherer is the recognized agent in the enforcement of those penalties, and at the end of this same section there is a penalty put upon him, payable by the company, if it appears that he has charged improper tolls.    It would seem as though the Legislature, on the application of the several turnpike companies of the State, had recognized that the penalties imposed under their several charters upon those avoiding the payment of tolls were not ample, and the Act of 1890 was passed for their benefit.    Is it not to be read as though the provision of this Act were inserted in the charter of each company as an additional penalty, and the toll-gatherer recognized as the agent to enforce the penalties of this Act as he is those in the original charter?

But aside from this recognition of this officer by the charter, as the proper officer to enforce these penalties, how is it possible to make the provisions of this law available, unless the toll-gatherer is allowed an implied power to enforce its provisions?    He is the only official on the ground to deal in the collection of tolls with those using the road and refusing to pay.    To collect at all, it is necessary oftentimes to act promptly, and he is the only one who can so act. It is submitted that for the proper discharge of Bowen's duties it may frequently be necessary for him to invoke the aid of the Act of 1890, or let the toll go uncollected, and that should he wait for a meeting of the directors or stockholders of the company, for in no other way (apart from appellee's contention), could the aid of the criminal law be invoked, so as to bind the appellant, the law would for many causes become useless.    It is not the policy of the law so to construe the powers and duties of this toll-gatherer as to make it possible and easy for turnpike companies to have their employees constantly invoking its aid, possibly by direct instruction of its general officers, and in practice making it their duty to invoke its aid, and at the same time to escape liability for wrongs done

to individuals in its use, because they purposely never will permit either directors or stockholders to sanction it.   Indeed, it would be folly in them ever to sanction it and incur liability, if without taking any such risk they can get the benefit of its provisions whenever the general officers or employees wish.   The same reasoning which shows it to be in the line of Bowen's duty to invoke the aid of the Act of 1890 to collect tolls, is applicable to the act of Offutt, the counsel of the company, who suggested and advised its use by Bowen.   If appellee be correct in this contention as to it being within the scope of Bowen's and Offutt's employment to bind the appellant in procuring the warrant in question, then the Court below committed no error in refusing the defendant's first and fourth prayers.

BRISCOE, J., delivered the opinion of the Court.

This is a suit for false arrest and malicious prosecution brought by the appellee Fletcher Green against the appellant, the President, Managers and Company of the Baltimore and Yorktown Turnpike Road, a corporation duly incorporated under the laws of the State of Maryland.

The declaration states that the defendant on the 17th day of September, 1894, falsely, maliciously and without probable cause, procured or caused to be procured, a warrant, to be issued by Albert W. Perrie, a justice of the peace of the State of Maryland, in and for Baltimore County, under the Act of 1890, ch. 442, for the arrest of the plaintiff, charging him with defrauding the Baltimore and Yorktown Turnpike Road of tolls ; that the justice of the peace required him to enter into a recognizance for his appearance at the Circuit Court of Baltimore County to answer the charge ; that the charge was afterwards dismissed and the plaintiff discharged.   It is also alleged that the charge contained in the warrant was in fact, false, malicious and without probable cause.

At the trial there were two exceptions taken, one to the admissibility of certain testimony and the other to the re-

fusal of the Court to grant the defendant's 1st, 2nd, 3rd, 4th, 6th and 7th prayers.    The judgment being for the plaintiff, the defendant has appealed.   ,

There were but two witnesses examined at the trial; they were the plaintiff, Fletcher Green, and Charles E. Bowen, employee of the defendant corporation and its toll-gatherer. The material facts are: The appellant owns and operates a turnpike road which extends from Baltimore City through Towson to the Pennsylvania line; that on September 17th, 1894, the plaintiff drove his wagon partly through what is known as the Towson gate; that Bowen, the gatekeeper, came out and said he wanted the toll, &c.  " I told him I would not pay.   He said you can't go down the road, and he took one of my mules by the bridle and backed the wagon out of the gate and across the pike, and stood in the middle of the gateway.   I told him I would not pay eight cents; if I give you anything I will give you ten cents, and with that I drove up and pulled around him and went down to the other gate, where I paid ten cents."

The witness Bowen testified that " On September 17th I had trouble with Mr. Green about his toll; he was going to Baltimore and was driving a two-horse narrow-tread wagon. I demanded the toll; he said he did not intend to pay it; I said you can't go through this gate, and caught his horse by the bridle and backed the team away from the gate; he said, let me go and I won't go through your gate; he then drove around the gate over the railroad tracks, and went on down the pike to Baltimore; he did not tell me he was going to drive around the gate; he did not tell me why he refused to pay."

He further testified as to the arrest: "I remember I went to Col. Offutt's office and explained to him the whole circumstance of my trouble with Green, and he got a book and showed me the law; he did not advise me to have Green arrested; he just told me in a general way what the law was, that anybody who evaded the payment of toll was liable to be arrested; I went to the squire's office, who told

me he knew of no such law ; I then went to Col. Offutt and he went with me to the squire and pointed out the law to him and left without making any suggestion to the squire ; I then made the affidavit for Green's arrest."

In the view we take of this case it will not be necessary for us to decide all the questions raised on this appeal. The questions of law involved are well settled by numerous decisions of this Court. To hold a corporation liable for a tortious act committed by its agent, the act must be done by its express precedent authority, or ratified and adopted by the corporation, or that the act was done *bona fide* in pursuance of a general authority in relation to the subject of it. In the case of *Carter* v. *The Howe Machine Company*, 51 Md. 298, after reviewing the authorities upon this subject, the Court decides that in a case like the present where the corporation is sought to be held liable for the wrongful and malicious act of its agent or servant in putting the criminal law in operation against a party upon a charge of having fraudulently embezzled the money and goods of the company, in order to sustain the right to recover, it should be made to appear that the agent was expressly authorized to act as he did by the corporation. The doing of such an act could not, in the nature of things, be in the exercise of the ordinary duties of the agent or servant entrusted with the custody of the company's money or goods, and before the corporation can be made liable for such an act, it must be shown either that there was express precedent authority for doing the act, or that the act has been ratified and adopted by the corporation. And to the same effect are the more recent cases of *Tolchester Beach Improvement Co.* v. *Steinmier*, 72 Md. 313 ; *Central Railway Co.* v. *Brewer*, 78 Md. 406 ; *Kirk* v. *Garrett*, 84 Md. 383.

Now there is no evidence in this case that Bowen, the toll-gatherer, was authorized by the corporation to make the arrest, nor that he was acting within the scope of his employment. On the contrary, his positive testimony is, that he was not advised by Mr. Offutt, the attorney, to make

the arrest or to swear out the warrant. There was no legally sufficient evidence from which the jury could have inferred express precedent authority, nor to establish the adoption or ratification by the defendant of the act of the agent in making the arrest.

For these reasons we are of opinion that there was no legally sufficient evidence in this case to have authorized the Court in submitting this case to the jury. The defendant's first prayer should have been granted. It is as follows : " That there is no evidence in this case legally sufficient to prove that any of the officers or agents of the defendant corporation were authorized by the company to have the arrest made which is complained of in the plaintiff's declaration, or that the company subsequently adopted and ratified the acts of said officer or agent, and that, therefore, the plaintiff is not entitled to recover in this action, and the verdict of the jury must be in favor of the defendant." For these reasons the judgment will be reversed, and as there can be no recovery in the case a new trial will not be awarded.

*Reversed, without awarding a new trial, with costs.*

(Decided June 23rd, 1897).