ALEXANDER P. MACAULEY, Respondent, v. THEODORE B. STARR, INC., Appellant.

First Department, January 14, 1921.

**Malicious prosecution — plaintiff indicted for larceny on evidence furnished in part by defendant's agents — indictment dismissed — defendant not connected with instigation or continuance of malicious prosecution — complaint dismissed — excessive verdict — punitive damages not authorized.**

In an action for malicious prosecution wherein the plaintiff had a verdict for $100,000 it appeared that on the 23d day of December, 1916, a customer came into the store of the defendant in New York city and made purchases fo.: which he paid in part with forged travelers' checks on a Canadian bank; that the same purchaser passed similar forged checks to other firms in the city of New York about the same time; that defendant's floor manager made complaint to the police department of the city of New York, which, after an investigation, reported the matter to the district attorney's office; that before indictment the plaintiff was arrested in St. Louis charged with passing similar forged checks on the same bank; that an agent of the defendant was sent to St. Louis by the district attorney, at his expense and over the protest of the defendant, to identify the plaintiff; that the plaintiff was extradited from Missouri and brought back to New York city where he pleaded not guilty and was admitted to bail; that thereafter on the testimony of the defendant's agents a superseding indictment was found and on the application of plaintiff herein a commission was allowed to take evidence in his behalf; that as a result of the evidence taken on said commission the district attorney became convinced that a mistake had been made and procured the dismissal of the indictment, though he did so against the objection of one of the defendant's agents.

*Held,* on all the evidence, that the defendant was not connected with the instigation or continuance of any malicious prosecution and that the complaint should be dismissed.

If the defendant alone were responsible for the injury to the plaintiff's reputation and for the damage caused by his false or mistaken arrest, the verdict might not be said to be excessive, but in view of the fact that the defendant is only in part responsible for the injury, and as the plaintiff was first arrested for the crimes in St. Louis and afterwards for committing fraud on five different firms in New York city, it cannot be said that the acts of the defendant could have been the cause of all the damage suffered.

Upon the evidence presented there was no justification for the charge of the court authorizing the jury to assess upon the defendant punitive damages,

for a corporation is not liable for exemplary damages unless the act of its agent was explicitly authorized or afterwards ratified, or there was negligence in the hiring of an improper servant, and the evidence does not establish the existence of any of these conditions.

The fact that the defendant permitted its servant to go to St. Louis to make the identification of the plaintiff in the criminal proceeding, after protesting, and at the expense of the district attorney, was not the instigation or the continuance of a prosecution by the defendant.

Furthermore, at the time that the defendant's agent was sent to St. Louis, there existed as a matter of law probable cause for the prosecution of the plaintiff herein, so that any act of the defendant, even though it had acted voluntarily in sending its servant to St. Louis, would then have been justified as matter of law as supported by probable cause for belief that the plaintiff was the party guilty of the frauds in New York city.

The fact that the defendant's agents were witnesses before the grand jury which handed down the superseding indictment is not such a participation by the defendant in the prosecution as would subject it to liability.

The identification by the defendant's agents of the plaintiff herein as the one who committed the crime does not, on the facts of the case, establish bad faith on the part of the defendant.

Any protest made by the agent of the defendant against the dismissal of the superseding indictment was not the protest of the defendant but was the protest of the agent individually, and, furthermore, the protest was not effectual in any way to cause further prosecution because the indictment was dismissed and, therefore, no damage could have resulted from that protest.

DOWLING and PAGE, JJ., dissent.

APPEAL by the defendant, Theodore B. Starr, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of January, 1920, upon the verdict of a jury for $100,000, and also from an order entered in said clerk's office on the same day denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Martin W. Littleton* of counsel [*William A. Moore* and *Theodore H. Lord* with him on the brief; *Swan, Moore & Danforth,* attorneys], for the appellant.

*Terence J. McManus* of counsel [*William M. K. Olcott* and *Nathan Ballin* with him on the brief; *Olcott, Bonynge, McManus & Ernst,* attorneys], for the respondent.

SMITH, J.:

The action is brought for damages for malicious prosecution. Upon the 23d day of December, 1916, a customer came into the jewelry store of Theodore B. Starr, Inc., and purchased some sleeve buttons. The price of these sleeve buttons was $550. The customer paid therefor $150 in cash and $400 in two travelers' checks on the Canadian Bank of Commerce. These checks were made out to G. H. Meighen and were indorsed in that name. These checks proved to be forgeries. Upon the discovery of the forgery Mr. Hill, an employee of the defendant, and conceded to be the floor manager, and spoken of in one or two places in the evidence as the manager of the defendant, reported the matter to the police department. Thereafter Officer Curley, a detective attached to the police department was detailed to investigate the crime. He came to the defendant's store and interviewed the employees who had knowledge of the facts and thereafter reported the same to the district attorney's office. It seems that this same purchaser passed similar forged travelers' checks upon the Canadian Bank of Commerce to five other firms in the city of New York, which matter was, at the same time, brought to the attention of the district attorney. The district attorney directed the detective to produce the witnesses from these different stores before the grand jury. It was called to the attention of these witnesses that a criminal by the name of Christmas Keough had been guilty of similar crimes theretofore and his photograph was obtained from the police department. This photograph, however, was said to have been taken eighteen or twenty years before. The witnesses were of opinion that this photograph, considering the difference in age, " bore a resemblance " to the man who had practiced the fraud, and they so swore before the grand jury. A clerk by the name of Herman Muller was the clerk who sold these sleeve buttons for Theodore B. Starr, Inc., and his evidence was taken before the grand jury, as was also the evidence of Hill, the floor manager, and also the evidence of one Oppenheim, who was a special detective employed by Theodore B. Starr, Inc., at this time. Before the indictment was handed down report came to New York that some man had in St. Louis upon the thirtieth day of December, one week later

than the time these forged checks were passed in New York, passed forged checks upon the same bank which were in all respects similar except as to the name of the payee and that he had been arrested in St. Louis upon the 3d day of January, 1917. The man arrested in St. Louis was this plaintiff, A. P. Macauley, and he was identified by six witnesses in St. Louis as the man who had passed the checks in one place and attempted to pass them in another in St. Louis. His photograph was afterwards sent to New York, and eight witnesses from these different stores were of opinion that this photograph was the photograph of the man who committed the frauds in New York city. A bench warrant was issued for the arrest of Christmas Keough, alias G. H. Meighen, also alias A. P. Macauley. Extradition was sought and the district attorney sent Officer Curley to St. Louis in pursuance of the extradition papers signed by the Governor in order to bring Macauley back to the State of New York. When Officer Curley arrived in St. Louis he consulted with an officer called the circuit attorney, the criminal prosecutor in that State, and it was found necessary to have someone in St. Louis to identify this A. P. Macauley. The district attorney made application, therefore, to Theodore B. Starr, Inc., to send Herman Muller to St. Louis for this purpose. It appears uncontradicted that Theodore B. Starr, Inc., was, at first, unwilling to let him go for this purpose, but afterwards, upon persuasion of the district attorney, permission was given that he should go and he did go to St. Louis at the expense of the district attorney and there identified Macauley as the man who had committed the fraud upon Theodore B. Starr, Inc., in the city of New York. Proof was offered at the hearing before the Governor of Missouri that Macauley arrived in St. Louis upon the twenty-third day of December, and the hotel register of the Hamilton Hotel of St. Louis was presented which apparently had his signature as a registered guest upon that date, and a large number of witnesses were sworn in behalf of Macauley, all of whom swore that Macauley was in St. Louis either the night of the twenty-third or the morning of the twenty-fourth day of December. Nevertheless, upon the identification of Muller, extradition was allowed and the plaintiff was brought to New York and was arraigned and pleaded not guilty and was admitted to bail. Thereafter, and upon

April 5, 1917, a superseding indictment was found upon the testimony of Muller and Hill, charging Macauley with this crime.

In the month of June a commission was allowed to take evidence in behalf of Macauley in Toronto, where Macauley lived, in Detroit, in Chicago and in St. Louis. An assistant district attorney named Kilroe attended upon that commission in behalf of the People and Macauley and his attorney were also present. A large number of witnesses were sworn in these different cities. After the return to New York city Kilroe called together these witnesses who had identified Macauley and stated that he was satisfied that a mistake had been made and that Macauley could not have been in New York on December twenty-third and announced that he was compelled to ask that the indictment be dismissed. All of these witnesses, however, notwithstanding this report, still identified Macauley as the man who committed the crime in the city of New York except three representing Lord & Taylor and one other firm upon whom the fraud had been committed, who swore that "they were not sure." The evidence is to the effect that Muller then protested against the dismissal of the indictment and stated that they ought to have a jury trial, that a jury might convict him, notwithstanding the evidence given upon these depositions, but his persistence was without avail and the district attorney recommended the dismissal of the indictment which was granted in October, 1917.

The indictments against the plaintiff in St. Louis were afterwards dismissed. It does not appear for what reason. He was not tried. He was confessedly in St. Louis at the time the fraud was committed upon the firms in St. Louis, and upon a subsequent trial between one of the St. Louis firms which had been defrauded and this plaintiff, six witnesses still identified Macauley as the man who had been guilty of the frauds in St. Louis.

Thereafter this plaintiff commenced actions for malicious prosecution, both in St. Louis and in New York city. One of the actions has been tried in St. Louis, but with what result does not appear. This action was tried in New York, resulting in a verdict of $100,000 against the defendant, and

from this judgment and the order denying a motion for a new trial made therein this appeal has been taken.

It must be assumed upon this appeal that the plaintiff was innocent of the crimes with which he has been charged. That they were serious crimes is not controverted. He has been to large expense both in the employment of counsel, and upon the commission upon which testimony was taken on his behalf, which was only granted upon his payment of all the expenses of the commission, and he is shown to have expended upwards of $12,000 in order to clear himself from these charges. The damage to his reputation was great. He was practically thrown out of business for about a year. He had been for many years an agent for the sale of liquor, and he was after-wards interested in the sale of mining claims, and he swears that his income for two years prior to 1917 was in the neighbor-hood of $60,000 each year. If the defendant were alone responsible for the injury to his reputation and for the damage caused by his false or mistaken arrest, it is probable that the verdict could not be said to be excessive, but in view of the fact that the defendant is only in part responsible for this injury, and as the plaintiff was first arrested for these crimes in St. Louis and afterwards for committing fraud on five different firms in New York city, it cannot be said that the acts of the defendant could have been the cause of all the damage suffered.

Upon the evidence in this case we find no justification for the charge of the court authorizing the jury to assess upon the defendant punitive damages. The trial court charged that if the defendant was liable the jury might include punitive damages in its verdict, and to this an exception was taken. The rule of law in this State is now settled that a corporation is not liable for exemplary damages unless the act of the agent was explicitly authorized or afterwards ratified, or there was negligence in the hiring of an improper servant. (See 1 Sedgw. Dam. [8th ed.] § 380; *Pollack* v. *Staten Island Rapid Transit R. Co.,* 187 App. Div. 832; *Craven* v. *Bloomingdale,* 171 N. Y. 439, 450; *Kastner* v. *Long Island R. R. Co.,* 76 App. Div. 323.) There was clearly no direct authorization to make this identification of the plaintiff as the man who committed the fraud. There was no ratification of the identification

made, first, because there is no evidence that the defendant had knowledge of the circumstances under which the plaintiff was identified and the only ratification that can be claimed would be upon any presumed knowledge of Hill who is not shown to have been connected with the corporation with any authority to ratify such an act. Further, there is no evidence whatever that either Muller or Hill was negligently hired or was incompetent or unqualified to perform the duties for which he was employed. This ruling would in any event require a new trial of this action.

In the view I take, however, of the defendant's responsibility for the prosecution of the plaintiff, it may not be necessary to pass upon these questions which would only affect the right of the defendant to have the matter again submitted to another jury upon a new trial.

The plaintiff's difficulty, as I conceive, lies deeper, in the failure to connect the defendant with the instigation or continuance of any malicious prosecution. That a crime was committed and that these forged checks were passed by someone stands conceded. At the time the matter was reported to the police authorities the plaintiff's name was not mentioned and was not known. The matter was turned over to the district attorney who took the matter in charge and issued a bench warrant upon the thirtieth day of December for Christmas Keough, alias G. H. Meighen. The prosecution did not become a prosecution against this plaintiff until after receiving information that plaintiff had been arrested and identified in St. Louis for passing travelers'· checks upon this same bank of precisely similar description, except as to the name of the payee, whereupon, the plaintiff's name was inserted in the indictment as another alias for Christmas Keough. The district attorney swears that he directed that the defendant's ·clerk Muller be sent to St. Louis to identify the criminal. This was demurred to by the defendant who only acceded to the request or direction of the district attorney after protest. It is probably true that Muller could not have been compelled to go to St. Louis to make the identification; nevertheless, it is a civic duty of any one who has knowledge that a crime has been committed to give such authorities such assistance as may be asked for to find and punish the

criminal. The fact of allowing Muller to go to St. Louis to make this identification, after protest, was not, in my judgment, the instigation or the continuance of a prosecution by the defendant. The criminal authorities of the city had at that time taken the matter in charge, and with a presumption that those authorities would act within the law and upon reasonable cause this defendant cannot be held liable for any act of those criminal authorities which was not instigated, aided or abetted by the defendant. When Muller was sent to St. Louis he went there, not as an agent of the defendant, but as a witness simply, called by the district attorney to perform a civic duty, and the defendant, as I view the law, is no more liable for the act of Muller in identifying this plaintiff as the criminal than would be any master whose servant was called upon to testify in a criminal proceeding. Muller went to St. Louis, not at the expense of the defendant, but at the expense of the district attorney, and the fact that Muller's salary may have been paid meantime by the defendant constitutes in no sense a contribution by the defendant which would make the defendant a party to the instigation or continuance of the plaintiff's prosecution. But assume for the argument that the defendant's consent to allow Muller to go to St. Louis was such an act of the defendant as constituted a contribution or co-operation in the prosecution. It will be borne in mind that at that time there existed as matter of law probable cause for the prosecution of this plaintiff. These fraudulent checks had been passed in New York upon the twenty-third of December. One week later forged checks upon this same Canadian bank precisely similar to those which had been passed in New York were passed in St. Louis. The inference is irresistible that they were passed in St. Louis by the same man or, at least, by a confederate. With the identification of this plaintiff in St. Louis as the man who passed the forged checks there, the inference was at that time, and with the knowledge that the defendant then had, well nigh irresistible that the plaintiff was the man who passed the forged checks in New York city, so that any act of the defendant, even if the defendant had volunteered to send Muller to St. Louis, and had paid his expenses, would then have been justified as matter of law as supported by probable

cause for belief that the plaintiff was the party guilty of the frauds in New York city. It was only after the evidence was produced in St. Louis of the hotel register, and of the witnesses showing that the plaintiff was in St. Louis upon the twenty-third day of December, that any question could arise which would make the question of probable cause a question for the jury. It will be borne in mind also that notwithstanding the evidence produced in St. Louis, the district attorney of New York county was not convinced that the plaintiff was not the guilty party, but procured a superseding indictment upon the fifth day of April. It is true that Muller and Hill were witnesses in procuring that superseding indictment. But the mere fact that they swore as witnesses before the grand jury was not such a participation by the defendant in the prosecution as would subject the defendant to liability. This superseding indictment was not procured either by the direction, request or suggestion of the defendant, but purely at the instance of the criminal authorities of New York city. The defendant would not have been permitted to prohibit Muller and Hill from testifying for the purpose of procuring this superseding indictment. Such an act on the part of the defendant would be punishable as a crime under section 813 of the Penal Law. The defendant could not have then withdrawn the prosecution. Within a month we have upheld a conviction for larceny where the complaining witness sought to withdraw the prosecution and was forbidden by the magistrate before whom the prosecution was pending. (*People* v. *Rassel,* 194 App. Div. 966.) I venture that no case can be found in any court which would hold a party liable for malicious prosecution where the only participation in such prosecution was the giving of testimony by an employee of the party. There is no principle of law which would hold a party liable for the act of his servant, which was not actually advised or instigated by the party and which the party had no power to prevent. The liability of a master has never been carried to that extent for the act of a servant, and cannot be, within well-recognized principles under which the doctrine of *respondeat superior* has been applied.

It is claimed, however, that the act of Muller in first identifying the photograph of Christmas Keough, and after-

wards identifying the photograph of the plaintiff as the man who committed the fraud is an indication of bad faith on his part which should be charged to the defendant. Passing for a moment the question of the liability of the defendant for any act of Muller or Hill, not directed by the defendant, after the prosecution had passed into the hands of the district attorney, the facts of the case do not warrant the inference sought to be drawn by the plaintiff. This photograph of Christmas Keough was confessedly a photograph taken eighteen or twenty years before. But experience demonstrates that eighteen or twenty years in the life of a man causes marked changes in appearance, and when this photograph of Christmas Keough was presented to these witnesses they swore that there was " a resemblance " to the man who committed the fraud. Moreover, in the evidence of the plaintiff it appears that after the plaintiff had been charged with this crime he met in a hotel in Toronto a man by the name of Schadel. The plaintiff himself says that this man at first sight might have been taken for himself. They evidently discussed their resemblance and both of them went to another part of the hotel and were weighed, and while the plaintiff weighed 217 pounds, this man weighed 212 pounds. But this very man who the plaintiff swears might at first glance be taken for himself, the plaintiff himself suspected was the man Christmas Keough. He had taken pains to ascertain the facts in reference to Christmas Keough and his appearance, and he had learned that Christmas Keough had a mole on the back of his neck, and he undoubtedly saw the picture of Christmas Keough which was identified by these witnesses, including Muller. With these facts in mind, the plaintiff himself suspected that this man was Christmas Keough, and he had the clerk of the hotel go behind him to discover whether this man had a mole on the back of his neck. The fact that the plaintiff himself suspected that the man who he said had a slight resemblance to him upon first glance was, in fact, Christmas Keough clearly indicates that there was something in the features, as shown by the picture of Christmas Keough, taken twenty years before, which might induce these New York witnesses to believe, before the plaintiff had been discovered, that Christmas Keough was in fact the man who

committed the crime. But whatever that resemblance may have been and however mistaken these witnesses may have been as to the identity of Christmas Keough with the man who in fact committed the crime, there was full justification after the plaintiff had been arrested and identified in St. Louis for having committed a similar crime in the passing of forged checks upon this same bank exactly similar to the checks passed in New York, for their believing that the plaintiff was the actual criminal and the significance, therefore, of the prior identification of Christmas Keough, such as it was, has little if any weight in determining the good faith of Muller and the other New York witnesses in believing that the plaintiff was the man who actually committed this crime. I have said that after this testimony was given in St. Louis, which is the only evidence that can throw any suspicion upon the good faith of this identification, the defendant did nothing by act or word or suggestion to cause the finding of the superseding indictment, or to cause the further prosecution of this plaintiff. In making this statement I am not unmindful of the testimony to the effect that after the district attorney had stated that he thought a mistake had been made and he was going to move for a dismissal of the indictment, Muller and another witness protested that they should have a run for their money, and that the plaintiff should be put upon his trial. Grave suspicion is thrown around this testimony, when it appears that in a prior examination under oath Assistant District Attorney Kilroe, who swore to such protest, swore that the protest was made by another man representing another firm, and when the matter was brought to his attention he sought to qualify that testimony by saying that it was made by both Muller and the man representing another defrauded party. But, assuming for the argument that Muller did make that protest, the protest was not the protest of the defendant, but was the protest of Muller individually. Assuming further that Muller made the protest and the protest may be deemed the protest of the defendant, that protest was not effective in any way to cause any further prosecution, because the protest was unavailing and the indictment was dismissed. None of the damage, therefore, claimed to have been suffered by the plaintiff could have been the result of

any act of the defendant, even though Muller be held to be the agent of the defendant to make this protest.

These conclusions are, I think, clearly within the authorities. In Newell on Malicious Prosecution (at p. 21) the law is thus stated: " Actions for malicious prosecution are regarded by law with jealousy. · Lord HOLT said more than two hundred years ago that they ' ought not to be favored but managed with great caution.' Their tendency is to discourage prosecution for crime, as they expose the prosecutors to civil suits, and the love of justice may not always be strong enough to induce individuals to commence prosecutions, when, if they fail, they may be subjected to the expense of litigation, if they be not mulcted in damages." Further, in section 14, the author says: " Suits by which the complainant in a criminal prosecution is made liable to an action for damages, at the suit of the person complained of, are not to be favored in law, as they have a tendency to deter men who know of breaches of the law from prosecuting offenders thereby endangering the order and peace of the community." Further, under section 15, the author says: " While the court should not discourage actions for malicious prosecutions by establishing harsh rules of evidence, or by the rigid principles of law, by force of which a party may be deprived of an important remedy for a real injury, at the same time, all proper guard and protection should be thrown around those who, in obedience to the mandates of duty, may be compelled to originate and carry on a criminal prosecution which may from any cause terminate in favor of the accused." ·

As to any implied authority in a detective, it is held in *Penny* v. *N. Y. Central & H. R. R. R. Co.* (34 App. Div. 10) that there is no implied authority in one who is a detective to arrest a person.

In 18 Ruling Case Law (p. 17) the text in part reads: " To maintain an action for malicious prosecution the plaintiff must show that the defendant therein was responsible for the institution or continuance of the original proceedings complained of. Where the defendant did not institute any action against the plaintiff, or cause one to be maintained, he cannot be held in an action for malicious prosecution for giving of false and perjured testimony against the plaintiff.

Where he states the bare facts as to the conduct of a third person, to a judicial officer, and the latter erroneously deems a crime to have been committed, and directs the third person's arrest, the informer is not liable to the person arrested, as for malicious prosecution. It is the officer's error rather than the defendant's acts which are the cause of the plaintiff's injury." Again (on p. 18): "Nor has a defendant caused a prosecution when he acts only in subordination to the prosecuting attorney and under the latter's direction. The defendant's malice in such a case is immaterial." Again: "No particular method of proof is necessary to connect the defendant with the prosecution alleged to have been instituted by him. Thus it has been held that to show that the defendant instigated the prosecution, it may be proved that he employed counsel therefor, or gave instructions, or paid expenses, or procured witnesses, or stated that he had put the plaintiff in the penitentiary, or that the defendant was in any way active in forwarding the suit."

In *Miller* v. *Milligan* (48 Barb. 30) it is held that if there be any evidence that the defendant instigated or continued the prosecution the question becomes one of fact for the jury. In that case the evidence was to the effect that the defendant admitted that he had caused the arrest of the plaintiff and that he had said that he would make it cost him a nice sum before he got through with the matter, and it was held that with this evidence the whole evidence in the case did not so clearly preponderate in favor of the defendant as to justify a refusal to submit to the jury the question as to whether the defendant was the instigating cause of the prosecution. In *Dann* v. *Wormser* (38 App. Div. 460) it was held that the evidence was sufficient to submit to the jury the question as to whether the prosecution was instigated by the defendant. An extract from the opinion of Mr. Justice BARTLETT, however, is significant. The opinion in part reads: "The plaintiff was accused of the larceny of certain silverware which was stolen from the dwelling of the defendant while she was a servant in his household. She appears to have been suspected as soon as the silver was missed, but she was not arrested until several days later, and then, not upon a formal complaint by Mr. Wormser, but upon one which appears to have been

made by a police officer, who testified upon the trial of the present case, however, that Mr. Wormser did not ask him to arrest the plaintiff at any time, but that he made the arrest on his own account, after an investigation. Hence, it is argued that the plaintiff failed to show that the criminal proceedings were instituted by the defendant. *This would be correct if there were no other evidence* on the subject of Mr. Wormser's connection with the prosecution."

In 36 Lawyers' Reports, Annotated (N. S. p. 231) it is said: " It is agreed that the informer is responsible for, and only for, the complaint he actually makes, and for such action thereon as may be lawful and proper in view of it. (Citing cases.) Where he states the bare facts as to the conduct of a third person, to a judicial officer, and the latter erroneously deems a crime to have been committed and directs the third person's arrest, the informer is not liable to the person arrested, as for malicious prosecution. (Citing cases.)"

In *Yocum* v. *Polly* (1 B. Mon. [Ky.] 358) the law as stated in the head note is as follows: " Party acting in subordination to Commonwealth's Attorney, in a prosecution instituted by the latter's direction, from information derived from others, is not liable for a malicious prosecution, though he is actuated by malice against the accused."

It is true that there are authorities in other States which go far in holding a party liable for a prosecution where such party assisted and co-operated in the prosecution. Some of those authorities seem to lose sight of the public interest in encouraging prosecutions for crime, in the natural desire to give to a party injured damages for his injury. But those authorities should not be extended. Punishment for crime and the protection of the public peace are paramount considerations in the administration of the law. Public policy has made the question of probable cause a question for the court and not for the jury, to the end that a party may freely prosecute for crime without being subject to damages at the caprice or upon the sympathy of a jury. Moreover, it would be a misfortune to hold that where a crime has been committed a party may not bring the matter to the attention of the proper criminal authorities, trusting to the judgment and discretion of those authorities to take such steps as in their

judgment may be proper to apprehend the criminal, even though the testimony of the party's employee may be found necessary by the public authorities in their investigation and prosecution.

This action differs from most actions for malicious prosecution, because in most actions the proceeding is instigated against the person by whom damages are sought. This prosecution was not a prosecution against the plaintiff until after complaint herein had been filed and an indictment found, and after the plaintiff had been charged with a similar crime in St. Louis. After the prosecution thus became a prosecution against the plaintiff it is the undoubted law that the defendant may be held liable for damages which the plaintiff has suffered, provided that prosecution was continued or abetted by the defendant without probable cause and with malice. If, as I conceive, there be found no direction or abetting of the prosecution by the defendant after the plaintiff was charged with this crime, and after the matter had been put into the hands of the criminal authorities, there can be no liability to damages for malicious prosecution. If it be true that up to the time of the examination in Missouri, probable cause existed, as matter of law, for believing the plaintiff to have been guilty of this crime, no act of the defendant, however aggressive, prior to that time could subject the defendant to liability. If, further, the giving of testimony by Muller and Hill, after the examination in Missouri, had shown that the plaintiff was not in New York at the time the crimes were committed, be not chargeable to defendant, no other act or word is shown on the part of the defendant thereafter to render the defendant subject to damages for the injury which the plaintiff has suffered. Whatever may be the hardship to the plaintiff in these conclusions it is a case in which, for the preservation of the public peace, the plaintiff must be required to show strictly a continuance of the prosecution *by the defendant* after the examination in Missouri, of which I am unable to find the slightest evidence in this record. To hold the defendant liable upon this record for the damages which the plaintiff has sustained would in my judgment markedly discourage attempted prosecutions for crimes committed and would so

imperil the salutary enforcement of the criminal law as to constitute a public menace.

The judgment and order should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., and GREENBAUM, J., concur; DOWLING and PAGE, JJ., dissent.

Judgment and order reversed, with costs, and complaint dismissed, with costs.