WESTERN OIL REFINING COMPANY *v.* GLENDENNING.

[No. 12,761. Filed April 22, 1927. Rehearing denied June 28, 1927. Transfer denied January 17, 1930.]

*Roemler, Carter & Rust* and *Ryan & Devol,* for appellant.

*George Young, John F. Linder, Dodson & Scifres* and *William Robinson,* for appellee.

NICHOLS, J.—Action by appellee to recover damages for alleged malicious prosecution. It is averred in the complaint that, on or about November 28, 1922, the appellant falsely, maliciously, and, without probable cause, procured appellee to be indicted by the grand jury of Boone county, for the crime of embezzlement, by reason whereof, appellant was arrested and held by the sheriff and was compelled to give bail in the sum of $1,000 to procure his release. Said cause of action was set for trial for November 1, 1923, at which time, the said prosecution and indictment were, by the prosecuting attorney of said county, with the consent of the court, dismissed, and appellee discharged, and said prosecution terminated; that appellee was greatly humiliated, degraded and disgraced and injured in his reputation, and credit, and was compelled to, and did, expend the sum of $500 for attorneys' fees in defending himself and procuring his discharge; that appellee was damaged in the sum of $25,000 by reason of the above set out facts.

Appellant's motion to make the complaint more specific and its demurrer thereto were each overruled, and thereupon it answered in denial and by affirmative second and third paragraphs, the second averring that the dismissal of the criminal charge alleged in the complaint and the discharge of appellee from prosecution

was obtained in the following manner: At the September term, 1922, of the Boone Circuit Court, the grand jury investigated the conduct of appellee and the facts concerning the way in which he as agent of appellant, and as such entrusted with its property, had managed, used and controlled the same; that, at said time, John A. Sunderland was prosecuting attorney of said judicial circuit; that, in the discharge of their respective duties, said grand jury and said prosecuting attorney caused to appear before said grand jury witnesses who were duly sworn and examined before said grand jury and said prosecuting attorney, and after which the indictment for embezzlement referred to in the complaint was returned to the said circuit court; that the names of said witnesses were indorsed on the back of said indictment; that, after the term of office of said prosecuting attorney expired, one Ruel H. Cain became prosecuting attorney of said judicial circuit; that, while such prosecuting attorney, he never interviewed any of the said witnesses, never communicated with any of them in any way to know what they would testify to on the trial of appellee on said indictment, never caused said criminal charge to be set down for trial in said court, never had any subpoenas issued for any of said witnesses, never consulted with his predecessor in office, but, without doing any of these things, at the September term, 1923, of said court, he, in writing, moved the court to dismiss said indictment because of insufficient evidence, and, on said motion, he induced said court to order that said cause be and the same was dismissed, and all with the knowledge and consent of appellee herein and by his procurement; that the statements made by said prosecuting attorney in said criminal cause as the reason why the same should be dismissed were false, and he knew they were false, and he knew that said grand jury had returned said indictment for embezzlement against appellee herein on evi-

dence adduced before it, and which it, and the prosecuting attorney acting at the time said indictment was returned, deemed to be sustained by sufficient evidence; that each of said witnesses who appeared before the grand jury, in its investigation of said matter, would have testified, had they had an opportunity at the trial of said criminal charge, to the same and identical things that they testified to before said grand jury; and that the testimony of said witnesses would have shown that appellee received the property of appellant, failed to account for the same, and was guilty of embezzlement; that said acts of said prosecuting attorney and his failure to act were so done and procured in violation of his oath and duty, and for the purpose of preventing the proper administration of justice in said circuit court in order that appellee might be released from said charge of embezzlement without standing trial, and that he might have an apparent cause of action against appellant for malicious prosecution. The defendant further says that said criminal prosecution would not have been so dismissed by said circuit court had the facts herein stated been truthfully stated to it.

The third paragraph of answer is substantially the same as the second. There was a reply in denial and trial by jury, which resulted in a verdict for $9,000 for appellee, on which judgment against appellant was rendered, from which, after appellant's motion for a new trial was overruled, this appeal.

Appellant assigned as error the court's action in overruling the motion to make the complaint more specific, the demurrer to the complaint, and the motion for a new trial. The court did not err in overruling appellant's motion to make the complaint more specific. It was only necessary to aver that the prosecution was terminated and appellee discharged without setting out the evidentiary facts, and it was not neces-

sary that the complaint should contain the record entry made by the court showing the dismissal of the indictment and discharge of appellant. *Mull* v. *McKnight* (1879), 67 Ind. 525, 526.

There was no error in overruling appellant's demurrer to the complaint. The complaint states a cause of action, and it was not necessary that it should contain a copy of the judgment dismissing the indictment against appellee.

. It appears by the undisputed evidence in the case that appellee was employed by appellant in the sale of oil and gasoline at a station in Lebanon, Indiana, beginning in the latter part of the year 1918, and continuing until his discharge in 1922. During such employment, it was a part of his duties to sell and deliver oil and gasoline, using a truck for that purpose. One Harry Kinneman was superintendent of stations in the territory which included the station at Lebanon, and appellee was working under his control. It was one of the duties of said Kinneman to check the daily reports of appellee for the purpose of determining whether they were correct, and whether they made a correct statement of the sales of oil and gasoline. In the performance of his duties, Kinneman discovered what appeared to be a shortage of oil and gasoline, and found that sales to divers persons had not been reported so far as he could discover. Among others, it appeared that sales had been made to one Charles Pankenon during the years 1920 and 1921 that had not been reported. A statement of the amount of these sales was taken from Pankenon, which showed the amount of the same to be $168.87. This amount, together with the amount of divers other sales, amounted to $427.43, which had not been reported to the company so far as Mr. Kinneman was able to determine. Appellee had executed a bond to appellant, conditioned for the faithful discharge of

his duties, in the sum of $1,000, and, appellee having failed satisfactorily to account for such shortage, appellant reported the same to the bonding company as surety. Kinneman, after the discharge of appellee, and about the middle of May, 1922, presented the matter of the shortage to the prosecuting attorney of Clinton county. After introducing himself, he said "I have something here that the Bonding Company, or perhaps it is the surety company, wants to lay before the prosecutor, or proper officials," giving to the prosecuting attorney the statements of the shortage, including the one from Pankenon. The prosecuting attorney then stated to Kinneman that he did not wish to report an information on that evidence, and that he would lay it before the grand jury. Mr. Kinneman then remarked, in substance, that that would be all right, and that was what they wanted. This was, in substance, all that Mr. Kinneman said at the time, or thereafter, for that matter, except that, upon one occasion, he called the prosecuting attorney and inquired as to what had become of the matter, when he was informed that the grand jury had not yet been called. In November, 1922, which was more than five months after the conversation mentioned above between Kinneman and the prosecuting attorney, the subpoena was issued for certain witnesses, including Kinneman, Pankenon and others, to appear before the grand jury, which they did, and testified. Upon this occasion, the statement of sales made to Pankenon was presented to him, and he testified that it was a true statement. Thereafter, the indictment upon which appellee was arrested and which occasioned this action was returned. It thus appears that appellee was not arrested because of any information given by appellant or appellant's agent as the proximate cause of such arrest, but that the prosecuting attorney refused to file an affidavit based on any information as to the evidence

furnished by Kinneman, deferring such action until an investigation was made by the grand jury, and that the arrest resulted from an independent investigation of the acts of appellee, made before the grand jury. There is nothing that indicates that Kinneman in any way procured himself or any other witness to be subpoenaed before the grand jury. Nowhere in the record do we discover any conduct on the the part of Kinneman that indicates that he was moving in the spirit of malice in giving the information which he gave to the prosecuting attorney. No other person connected with the company communicated with the prosecuting attorney. Mr. Trimble, in charge of the Indianapolis office, and Mr. Foreman, the auditor of the company, participated in the investigation which was made, but we can discover nothing in the conduct of any of these parties that would indicate anything other than a legitimate investigation. Thereafter, the prosecuting attorney, who was the successor to the one in office when the indictment was returned, without investigation as to the merits, so far as appears by the record, filed his motion to dismiss the indictment, upon which the court acted favorably, and the indictment was dismissed and appellee discharged.

There can be nothing improper in the conduct of any citizen who, without malice, reports to the proper official any violations of the criminal law of the state, and, if thereafter, such officer makes an independent investigation of the matter reported to him, and, following such investigation, returns an indictment or information against the party charged, it cannot be said that the party so reporting to the prosecuting attorney conduct which he believes to be a violation of the law is liable in damages because of the prosecution growing out of such investigation. In the case of *Malloy* v. *Chicago, etc., R. Co.* (1914), 34 S. D. 330, 148

N. W. 598, the evidence showed, without dispute, that the state's attorney, after having made a full and personal investigation of the matter, prepared the complaint, and advised the defendant to sign it, thus disclosing that, while the defendant made a disclosure of the supposed facts to the state's attorney, the latter did not rely upon such disclosure, it was held that, the state's attorney having made an independent investigation, it could be fairly deduced from the evidence that, because of such investigation, and not because of the representations, the prosecution was advised, and that, in order to sustain the action, it must affirmatively appear that the parties sought to be charged were the proximate and efficient cause of maliciously putting the law in motion. It was also held that there was an entire absence of malice upon the part of any one.

In *Wilkinson* v. *Arnold* (1858), 11 Ind. 45, it was held that the want of probable cause is not sufficient without malice, nor will malice suffice where there was probable cause for prosecution, and that both malice and want of probable cause must concur in order to lay the foundation of an action. In the instant case, the one statement made by Pankenon of the amount of gasoline which he had purchased and which was unaccounted for at that time by appellee, furnished a probable cause of indictment, and justified Kinneman in presenting the matter to the prosecuting attorney for investigation.

In *Ryan* v. *Orient Ins. Co.* (1922), 96 Vt. 291, 119 Atl. 423, it is stated that the decided cases which deal with questions of malicious prosecution generally are based upon an affidavit or complaint of a private individual, in which case the person making the affidavit is usually regarded as the prosecutor, and held liable as such. It must be observed that, in the instant case, the indictment was returned by a grand jury on an independent investigation made with the assistance of

the prosecuting attorney. In the Ryan case, it is said that: "It is of a public concern that a citizen having reason to believe, or even suspect, that a crime has been committed, be permitted to direct the attention of a prosecuting officer towards its investigation, without exposure to the peril of being held liable for malicious prosecution in case of a failure of conviction." We adopt, without hesitation, this rule of law. It is further said in that case that: "A defendant has not 'caused a prosecution' in the sense that renders him liable when he acts only in subordination to the prosecuting attorney and under the latter's directions; nor when he states the bare facts as to the plaintiff's conduct to such attorney, leaving him to judge of the propriety of proceeding with the charge, where the attorney does not act in any way under the direction of the informant or the influence of the information thus received."

Other authorities involving the questions here discussed, though not all of them directly in point are: *Florida East Coast R. Co.* v. *Groves* (1908), 55 Fla. 436, 46 So. 294; *McClarty* v. *Bickel* (1913), 155 Ky. 254, 159 S. W. 783, 50 L. R. A. (N. S.) 392; *Miller* v. *Metropolitan Life Ins. Co.* (1905), 28 Ky. Law Rep. 223, 89 S. W. 183; *Moriarty* v. *Almich* (1918), 141 Minn. 247, 169 N. W. 798; *Cox* v. *Lauritsen* (1914), 126 Minn. 128, 147 N. W. 1093; *Caddel* v. *Brown* (1920), 57 Mont. 266, 187 Pac. 897; *MacLaughlin* v. *Lehigh Valley R. Co.* (1919), 93 N. J. Law 263, 108 Atl. 309; *Farnam* v. *Feeley* (1874), 56 N. Y. 451; *Maccauley* v. *Theodore B. Starr, Inc.* (1921), 194 App. Div. 643, 186 N. Y. Supp. 197; *Anderson* v. *Dyer* (1919), 188 App. Div. 707, 176 N. Y. Supp. 758; *Western Nat. Bank* v. *White* (1910), 62 Texas Civ. App. 374, 131 S. W. 828; *Christy* v. *Rice* (1908), 152 Mich. 563, 116 N. W. 200.

But, even if it be conceded that what Kinneman said to the prosecuting attorney was the proximate cause of

appellee's indictment, still it does not appear that Kinneman acted with the authority of the company by which he was employed. He had no authority to collect any money from anybody, and it does not appear that he was ever authorized by appellant to present the matter to the prosecuting attorney. On the contrary, the prosecuting attorney and Kinneman both testified that, when the matter was presented to the prosecuting attorney, Kinneman stated that he was presenting it at the request of the bonding company. It is the law that the burden is upon the plaintiff to prove the authority of the defendant to its agent to institute a prosecution in order to make the party so charged liable, and that, unless it appears by the evidence that the prosecution was instituted by the direction of the principal, or that such act of the agent was adopted by the principal, there can be no recovery against the principal. *Dally* v. *Young* (1878), 3 Ill. App. 39; *Springfield Engine, etc., Co.* v. *Green* (1887), 25 Ill. App. 106; *Central R. Co.* v. *Brewer* (1894), 78 Md. 394, 28 Atl. 615, 27 L. R. A. 63; *Govaski* v. *Downey* (1894), 100 Mich. 429, 59 N. W. 167; *Gillett* v. *Missouri Valley R. Co.* (1874), 55 Mo. 315, 17 Am. Rep. 653; *Thompson* v. *Bell* (1895), 11 Texas Civ. App. 1, 32 S. W. 142; *Wikle* v. *Louisville, etc., R. Co.* (1902), 116 Ga. 309, 42 S. E. 525; *Atchison, etc., R. Co.* v. *Brown* (1897), 57 Kans. 785, 48 Pac. 31; *Turnpike Road* v. *Green* (1897), 86 Md. 161, 37 Atl. 642; *Beiswanger* v. *American Bonding Co.* (1904), 98 Md. 287, 57 Atl. 202; *Staton* v. *Mason* (1905), 106 App. Div. 26, 94 N. Y. Supp. 417; *Markley* v. *Snow* (1904), 207 Pa. St. 447, 56 Atl. 999, 64 L. R. A. 685. It thus appears that the verdict is not sustained by sufficient evidence, and that it is contrary to law.

The judgment is reversed, with instructions to grant a new trial.

Dausman, J., absent.